UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JERRY HATTON, DAVID GARCIA, and VUVINNOE DARKESE | § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. 25-3373 |
| RICKY SHULER TRUCKING, INC., RICKY SHULER, JEFFREY MARONEN, and DANIEL SANCHEZ | § § § § | JURY DEMANDED |
| Defendants | § § | |

## ORIGINAL CLASS ACTION COMPLAINT

Plaintiffs Jerry Hatton, David Garcia, and Vuvinnoe Darkese ("Plaintiffs") bring this action on behalf of themselves and a proposed class of similarly situated contractors against Defendants Ricky Shuler Trucking, Inc. ("RST"), Ricky Shuler, Jeffrey Maronen, and Daniel Sanchez.

### OVERVIEW

#### A. THE TILR

1. Title 49 of the United States Code requires entities meeting the statutory definition of motor carrier to register with the Department of Transportation ("DOT") and to comply with the regulations promulgated by the DOT.

2. Defendant RST has been an authorized carrier registered with the DOT ("Authorized Carrier") since December 10, 2007. The US DOT No. for RST is 1580758.

3. The regulations with which an Authorized Carrier must comply include Truth-in-Leasing regulations ("TILR"), which govern the agreements between Authorized Carriers and the "owners" of trucks who are hired by the carriers to transport goods. *See* 49 C.F.R. §§ 376.1 *et seq.*

"Owner," for purposes of this Complaint, refers to those persons that qualify as an "owner" as defined by the TILR.  Plaintiffs and all members of the class meet that definition.[1]

4.    The TILR exist to prevent large carriers from taking advantage of Owners due to their weak, uneven, or inferior bargaining power or position.  The stated objectives of the TILR are:

- to promote truth-in-leasing—a full disclosure between the carrier and the owner-operator of the elements, obligations, and benefits of leasing contracts signed by both parties; …

- to eliminate or reduce opportunities for skimming and other illegal or inequitable practices by motor carriers; and …

- to promote the stability and economic welfare of the independent trucker segment of the motor carrier industry.

*Lease and Interchange of Vehicles*, 133 M.C.C. 141 (Jan. 9, 1979).

5.    An Owner aggrieved by a motor carrier's non-compliance with the statutory and regulatory regime created by Title 49, including the TILR, may seek damages and injunctive relief under 49 U.S.C. § 14704(a).

## B.    THE OOLA

6.    On information and belief, since on or by 2020, RST's agreements with Owners who provide transportation equipment and services on behalf of RST have been governed by an Owner Operator Lease Agreement ("OOLA").

7.    The OOLA is a standardized contract that RST enters into with all Owners who provide transportation equipment and services on behalf of RST.

---

[1]    The TILR do not employ the term "owner-operator."  Instead, the term "owner-operator" is a term of art in the transportation industry that refers to independent contractors who hire out and drive their own trucks.  The term "Owner" as defined by the Truth-in-Leasing regulations encompasses owner-operators who lease their trucks to Authorized Carriers.

8.      Since 2020, RST has slightly modified some of the terms in the OOLA.  However, the provisions made the subject of this proposed class action have not changed in any material respect.

**C.    REMEDIES AND RELIEF SOUGHT**

9.      At all relevant times since 2020, RST violated the TILR in that: (i) the OOLA, itself, fails to comply with the TILR that govern the terms of such lease agreements; (ii) RST has failed to comply with the TILR that govern a carrier's dealings with Owners related to such lease agreements; and (iii) RST has failed to comply with the TILR that require a carrier to adhere to and perform the terms of the OOLA that are governed by such TILR.

10.     Plaintiffs and other Owners similarly situated have sustained damages as a result of the violation of such TILR.  Accordingly, by this action, Plaintiffs, on behalf of themselves and on behalf of the proposed class, seek damages resulting from such violations.

11.     The violation of these TILR also constitutes breach of contract and fraud in that: (i) the failure to adhere to and perform the terms of the OOLA that are governed by such TILR also constitute breach of contract; and (ii) the failure to disclose material facts that the TILR require also constitutes fraud.

12.     As such Plaintiffs, on behalf of themselves and on behalf of the proposed class, also seek any and all remedies that may be available for breach of contract or fraud under applicable state law, including damages, disgorgement, and exemplary damages.

13.     By this action, Plaintiffs, on behalf of themselves and on behalf of the proposed class, seek declaratory relief that: (i) identifies those actual and omitted provisions of the OOLA that violate the TILR and that specifies how the terms of the OOLA violate such TILR; (ii) that identifies those business practices of RST that violate the TILR; (iii) that declares the meaning of any ambiguous terms of the OOLA that relate to the TILR at issue; and (iv) that specifies how

RST by its business practices has failed to comply with the OOLA; and (v) that specifies how RST has breached its duty to disclose by failing to disclose information that the TILR mandate be disclosed.

14.     By this action, Plaintiffs, on behalf of themselves and on behalf of the proposed class, also seek preliminary and permanent injunctive relief: (i) giving RST a period of 90 days to submit to this Court for its approval an amended OOLA that complies with the TILR; (ii) after the expiration of 90 days, enjoining RST from performing any transportation requiring DOT authorization using equipment it does not own until it executes with each person leasing such equipment to RST written agreements approved by the Court as conforming to the TILR; (iii) enjoining RST from continuing to engage in certain business practices that violate the terms of the TILR; (iv) enjoining RST from continuing to engage in certain business practices that fail to comply with the terms of the OOLA governed by TILR; (v) enjoining RST from engaging in acts of retaliation and harassment against Plaintiffs and any and all other potential members of the class; (vi) notifying proposed members of the class of: (a) the terms of the OOLA that violate TILR, including by omission; and (b) the business practices of RST that violate the TILR, including business practices that fail to adhere to or perform terms of the OOLA governed by TILR; and (vii) to the extent damages are not available for such violations on a class-wide basis, notifying proposed members of the class of the right to seek damages for such violations.

15.     Finally, Plaintiffs, on behalf of themselves and on behalf of the proposed class, also seek reasonable and necessary attorney's fees as provided by statute.

## JURISDICTION AND VENUE

16.     Plaintiffs, on their own behalf and on behalf of the proposed class, bring this action pursuant to 49 U.S.C. § 14704(a) and the common law of the state of Texas.  This Court has subject

matter jurisdiction under 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1337 (civil action arising under an Act of Congress regulating commerce) in that the causes of action alleged in this complaint arise under the laws of the United States regulating commerce and the activities of motor carriers engaged in the transport of property in interstate and foreign commerce, including 49 U.S.C. §§ 13103, 14102, 14704(a) and 49 C.F.R. Part 376.

17.    Jurisdiction over the state law claims of Plaintiffs and putative class members is also proper under 28 U.S.C. § 1367 because such claims are so related to the claims within this Court's original jurisdiction that they form part of the same case or controversy.

18.    Venue is proper under 28 U.S.C. § 1391 in that: (i) Defendant Jeffrey Maronen resides in the Southern District of Texas, and all the remaining Defendants reside in the state of Texas; and (ii) a substantial part of the events or omissions giving rise to the claim occurred in the Southern District of Texas.

**PARTIES**

19.    Jerry Hatton is a resident of the state of Texas.  Hatton entered into an OOLA with RST on or about November 30, 2020.  A copy of Hatton's OOLA is attached as Exhibit 1.

20.    David Garcia is a resident of the state of Texas.  Garcia entered into an OOLA with RST on or about April 6, 2022.  A copy of Garcia's OOLA is attached as Exhibit 2.

21.    Vuvinnoe Darkese is a resident of the state of Texas.  Darkese entered into an OOLA with RST on or about March 25, 2024.  A copy of Darkese's OOLA is attached as Exhibit 3.

22.    Defendant Ricky Shuler Trucking, Inc. ("RST") is a Texas corporation with its principal place of business at 316 County Road 400 (or 316 Shell Road), McCamey, Texas.  RST's registered agent for service is CT Corporation System, which may be served with summons at 1999 Bryan St., Suite 900, Dallas Texas, 75201.

23.     Defendant Ricky Shuler is the owner and president of RST.  Shuler may be served with summons at his principal place of business, 316 County Road 400, McCamey, Texas, 79752, or wherever he may be found.

24.     Defendant Jeffrey Maronen is the Chief Operating Officer of RST. Maronen may be served with summons at his residence at 26434 Morgan Creek Lane, Katy, Texas, 77494, his principal place of business at 26717 Westheimer Parkway, Suite 202, Katy, Texas, 77494, or wherever he may be found.

25.     Defendant Daniel Sanchez is the Executive Vice President of RST.  Sanchez may be served with summons at his at his residence at 1220 Crescent, McCamey, Texas, 79752, at his principal place of business, 316 County Road 400, McCamey, Texas, 79752, or wherever he may be found.

### CLASS ALLEGATIONS

**D.   CLASS DEFINITION**

26.     Plaintiffs bring this action on behalf of themselves and a class of all similarly situated persons, which class is defined as follows:

> **All Owners of motor vehicle equipment who executed an OOLA with RST and provided equipment and driving services under RST's federal operating authority as an Authorized Carrier at any time from July 22, 2021 to July 21, 2025 (the "Class Period").**

**E.   NUMEROSITY**

27.     On information and belief, numerous Owners provide equipment and driving services to RST at any given time.  Upon information and belief, that number was never less than 100 at any one time during the Class Period.

28.     In December 2019, RST acquired the assets of Xcalibur Logistics LLC, a Texas-based midstream trucking company. This acquisition doubled the size of RST's fleet to over 120

operating units, with nearly all the 120 commercial truck drivers at RST being owner-operators. In February 2022, RST expanded further by acquiring key transportation and related assets of NGL Crude Transportation, LLC. This acquisition doubled the size of RST's fleet to over 270 operating units.

29.    On information and belief, nearly all, if not all, of RST's commercial truck drivers during the Class Period have been Owners and nearly all, if not all, have been owner-operators.

30.    Accordingly, the class is so numerous that joinder of all members would be impracticable.

**F.    COMMONALITY**

31.    On information and belief, each potential class member is a party to a standard lease agreement with RST entitled the Owner Operator Lease Agreement, or OOLA. On information and belief, for each such OOLA, including the Hatton OOLA, the Garcia OOLA, and the Darkese OOLA, the terms are substantively identical with respect to those terms that constitute violations of the TILR. On information and belief, the terms omitted in violation of the Truth-in-Leasing regulation are likewise identical for each such OOLA. In addition, on information and belief, during the Class Period, RST has engaged in business practices, which business practices (both actions and omissions) violate the TILR for the reasons set forth below. These business practices apply to every party to an OOLA and thus affect Plaintiffs and every member of the proposed class similarly. As such, when the OOLA and RST's business practices violate these TILR, Plaintiffs and all potential class members are similarly affected by such violations.

32.    Similarly, the TILR mandate that carriers, such as RST, adhere to and perform the provisions of a lease agreement that the TILR require. When RST, by its business practices (both actions and omissions), fails to comply with the provisions of the OOLA governed by the TILR,

such business practices both violate the TILR and constitute breaches of contract. Plaintiffs and all potential class members are similarly affected by such breaches.

33. Finally, the TILR require that certain information be disclosed by an Authorized Carrier to Owners either in the terms of the lease or otherwise as set forth below. As such, RST has a duty to disclose that is common to Plaintiffs and all potential class members. When the terms of the OOLA omit the required disclosures or RST by its business practices fails to make such disclosures, Plaintiffs and all potential class members are similarly affected by such breaches of duty, which breaches of duty may be actionable as fraud.

34. Accordingly, questions of fact and law are common to the claims of Plaintiffs and all potential class members.

## G. TYPICALITY

35. Plaintiffs' claims are typical of the claims of the potential class as a whole. Those claims all arise from the same actual and omitted terms of the OOLAs and the same business practices of RST. The violations of the TILR that underlie Plaintiffs' claims are the same as the violations of the TILR that underlie the claims of the class. The breach of contract and fraud claims of Plaintiffs and the class, likewise, derive from the same legal duties (the OOLA and disclosures mandated by TILR) and the same breaches of duty (failure to comply with the OOLA and omitted terms and business practices with respect to all Owners that fail to disclose information that the TILR require an Authorized Carrier to disclose).

36. In effect, on information and belief, proof of Plaintiffs' claims will similarly prove the claims of all potential class members.

## H. ADEQUACY

37. Plaintiffs and their counsel are capable of fairly and adequately protecting the interests of the class. Plaintiffs' claims are common to the class and proof of those claims will

prove the claims of other potential class members. The interests of Plaintiffs and other members of the class are in harmony and are not adverse.  Plaintiffs have vigorously pursued their claims, dedicated significant time and energy to the case, and demonstrated a commitment to representing the interests of other class members.  As demonstrated hereby, counsel for Plaintiffs are seasoned commercial litigators, knowledgeable regarding the applicable law, and possessing experience both prosecuting and defending class actions.

**I.     CLASS CERTIFICATION**

> ### *i.     Rule 23(b)(2)*

38.     Class certification is appropriate under FED. R. CIV. P. 23(b)(2).  RST has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.  In particular, RST has entered into a standardized OOLA with class members that violates the TILR both because it includes and omits provisions that violate such TILR.

39.     As the OOLAs at issue remain in effect and the business practices of RST at issue persist, Plaintiffs on behalf of the proposed class seek: (i) declaratory relief that identifies those actual and omitted provisions that violate the TILR and that specifies how the terms of the OOLA violate such TILR; and (ii) injunctive relief that compels RST to terminate its existing OOLAs and enter into modified OOLAs that comply with such TILR or be prohibited from performing any transportation requiring DOT authorization using equipment RST does not own.  Such declaratory and injunctive relief, therefore, will be necessary and appropriate to prevent ongoing and future violations affecting class members apart from any monetary damages that may be awarded to class members for past violations.

40.     In addition, or in the alternative, the terms of the OOLA reflect RST's familiarity with the TILR.  The OOLA includes certain provisions that track the language of the TILR

verbatim.  Yet, the OOLA wholly omits terms the TILR require.  Further, RST, by its business practices, also fails to adhere to certain terms of the OOLA that the TILR mandate and fails to perform actions that the TILR require that do not involve the terms of the OOLA.  Accordingly, injunctive relief will also be necessary and appropriate, apart from whatever monetary damages may be available to class members for such violations, to prevent RST from continuing to engage in business practices that it knows or should know violate TILR.

41.    In addition, or in the alternative, class members have sustained damages with respect to many of RST's violations that are common to the class and that can be calculated with common evidence derived from RST's records using a common formula.  In some instances, however, although the terms of the OOLA or RST's business practices affect all members of the class and all members of the class suffer injury as a result of such violations, individual class members may sustain damages as a result of those violations that other class members do not suffer and such class members may be too few in number to be suitable as a subclass.  Alternatively, numerous class members may sustain damage as a result of such violations, but individualized evidence or methodologies may be necessary to calculate each class member's damages.

42.    These circumstances most commonly occur where the TILR mandate terms that the OOLA omits or mandate the disclosure of information that RST, by its business practices, fails to disclose.  Such disclosures were designed to allow class members to determine whether or not to contract with the carrier in question or seek a contractual relationship with a different carrier, to decide whether or not to obtain products or services from the carrier that could be purchased elsewhere, or to detect whether or not the carrier was dealing with them fairly and thus whether or not to terminate the relationship.  All such class members suffer injury as a result of such violations in that they are deprived of the mandated disclosures and thus of the opportunities that the

disclosure of such information provides.  Nonetheless, in some cases, the loss of such opportunities will result in damage to individualized class members that is distinct from the injuries commonly suffered by all class members.

43.    In those instances, declaratory relief and injunctive relief with respect to all class members would be necessary and appropriate, even if monetary relief were not available for the class, as such relief, including notice to class members, would remedy such nondisclosures and thus restore to all members the information and opportunities of which they have been deprived. Such relief would also give class members who have suffered individualized damages (but who are not sufficiently numerous to constitute a subclass) notice of such violations and thus enable such members to seek relief for such damages.

44.    Declaratory and injunctive relief would also be necessary and appropriate for the same reasons as to the fraud and breach of contract claims alleged on behalf of class members as those claims are based on the same conduct that forms the basis of RST's violations of the TILR for the reasons set forth in paragraphs 11, 33, and 35.

### ii.    _Rule 23(b)(3)_

45.    Class certification is also appropriate under FED. R. CIV. P. 23(b)(3).  The class members have all entered into a standardized lease governed by the TILR.  Further, all of RST's violations of those TILR concern the terms of that standardized lease or business practices common to all class members.  Also, for the reasons set forth in paragraph 44, the conduct that forms the basis for RST's violations of the TILR also forms the basis of the class members' breach of contract and fraud claims.  Accordingly, questions of law or fact common to class members predominate over any questions affecting only individual members.

46.    In addition, a class action is superior to other available methods for fairly and efficiently adjudicating this controversy.  As noted above, class members have sustained damages

with respect to many of RST's violations that are common to the class and that can be calculated with common evidence derived from RST's records using a common formula. Class members are not likely to file individual actions given the cost of litigation as compared to the potential for recovery. Class members, individually, lack the bargaining power to resolve claims concerning RST's violations of the TILR on an individualized basis. Requiring individual RST Contractors to prosecute separate actions would substantially impair or impede their ability to protect their interests as these individuals do not have the means or resources to pursue such claims on an individual basis. In fact, despite that RST has been an Authorized Carrier for nearly two decades and the violations of the TILR set forth below are copious and serious, on information and belief, no other cases involving the violation of the TILR have been filed against RST in federal court in Texas.

47.     Further, on information and belief, class members reside and perform transportation services for RST throughout Texas. As such, the class action method would be ideally suited to concentrate the litigation of a plethora of identical claims concerning recurrent violations of the TILR in one forum thereby conserving judicial and litigation resources.

<u>OVERVIEW</u>

**A.   THE TILR GOVERNS RST LEASES**

48.     The TILR appear in Part 376 of Title 49 of the Code of Federal Regulations. Section 376.1 makes these regulations applicable to any motor carrier, such as RST, that is registered to transport property under 49 U.S.C. § 13101 *et seq*. that leases equipment to perform such transportation. *See* 49 C.F.R. § 376.1. An Authorized Carrier may perform transportation using equipment it does not own only if there is "a written lease granting the use of the equipment and meeting the requirements contained in § 376.12." *See* 49 C.F.R. § 376.11(a). "Equipment" for purposes of the TILR means: "[a] motor vehicle, straight truck, tractor, semitrailer, full trailer,

any combination of these and any other type of equipment used by authorized carriers in the transportation of property for hire." *See* 49 C.F.R. § 376.2(b).

49.    RST is a for-hire motor carrier that transports goods in the United States. The DOT has authorized RST to engage in the transportation of property as a motor carrier under the provisions of 49 U.S.C. 13901 and 13902.

## B.   THE OWNERS

50.    The Code of Federal Regulations define an "owner" for purposes of the TILR ("Owner" for purposes of this Complaint) to mean: "A person (1) to whom title to equipment has been issued, or (2) who, without title, has the right to exclusive use of equipment, or (3) who has lawful possession of equipment registered and licensed in any State in the name of that person." *See* 49 C.F.R. § 376.2(d).

51.    A "lease" for purposes of the TILR refers to a contract or arrangement in which the Owner grants the use of equipment, with or without driver, for a specified period to an Authorized Carrier for use in the regulated transportation of property, in exchange for compensation. *See* 49 C.F.R. § 376.2(d).

52.    As a part of its business practices, contemporaneous with the execution of an OOLA, RST enters into a Conditional Lease Agreement with many of its owner-operators whereby each such owner-operator leases equipment from RST, which equipment the owner-operator then leases back to RST. Such a Conditional Lease Agreement vests lawful possession of the equipment on the owner-operator and thus qualifies the owner-operator as an Owner for purposes of the TILR.

53.    Each counterparty to an OOLA, including Hatton, Garcia, and Darkese, is or was an Owner within the meaning of the TILR.

## C. HATTON

54.     On or about November 30, 2020, Hatton entered into an OOLA with RST.  At that same time, Hatton also entered into a Conditional Lease Agreement with RST concerning a 2015 Freightliner with Vehicle Identification Number 3ALXFB001FDGD1285 (the "Freightliner"), which equipment he then leased back to RST pursuant to the OOLA.

55.     Later, Hatton exercised his option to purchase the equipment and became the owner of the Freightliner outright.  Thereafter, Hatton continued to lease the Freightliner to RST and perform services for RST as a driver pursuant to the OOLA.

56.     As with the OOLA, on information and belief, other than the payment terms, the terms of the Conditional Lease Agreements RST enters into with RST Contractors are substantively identical.

57.     While performing services for RST using the Freightliner pursuant to his OOLA with RST, Hatton was involved in an accident on December 28, 2024.  Such accident occurred, after Hatton had completed his deliveries for that day, while Hatton was returning to the location where he parked his Freightliner when it was not in use.

58.     As a result of that accident, the Freightliner suffered damage that rendered the Freightliner a total loss.  The empty trailer that RST provided to Hatton to perform such deliveries was also slightly damaged.

59.     Immediately thereafter, RST informed Hatton that it had submitted a claim for the Freightliner under the policy for which Hatton had been paying weekly, which Hatton understood from the terms of the OOLA to be premiums for such policy.

60.     While the claim was being adjusted, Hatton continued to perform services for RST pursuant to the OOLA using a tractor that Hatton rented from RST at a rate of $150 per working day.

61.     On February 28, 2025, due to a disagreement with RST over the amount due to Hatton from the insurance claim, RST instructed Hatton to return the tractor that he had been renting from RST either that evening or the next day.  However, RST did not, at that time, or at any time thereafter, terminate Hatton's OOLA.  Rather, RST continued to express interest in Hatton performing future services as soon as he obtained a replacement vehicle.  Nonetheless, Hatton has been unable to perform services pursuant to his OOLA since that time.

## D.  GARCIA

62.     On or about April 6, 2022, Garcia entered into an OOLA with RST.  At that same time, Garcia also entered a Conditional Lease Agreement with RST concerning a 2022 Mack with Vehicle Identification Number 1M1PN4GY5NM009148 (the "Garcia 2022 Mack"), which equipment Garcia then leased back to RST pursuant to the OOLA.

63.     Under the terms of his Conditional Lease Agreement with RST, Garcia had the obligation to pay 208 weekly installments of principal and interest at the rate of $725.00 per week or until on or about May 5, 2026.  At that time, Garcia will have the option to purchase the Garcia 2022 Mack for a "balloon payment" of $18,695.06.

64.     As of the filing of this Original Complaint, Garcia continues to perform services for RST pursuant to his OOLA.

## E.  DARKESE

65.     On or about March 25, 2024, Darkese entered into an OOLA with RST.  At that same time, Darkese also entered a Conditional Lease Agreement with RST concerning a 2022 Mack with Vehicle Identification Number 1M1PN4GY5NM009142 (the "Darkese 2022 Mack"), which equipment Darkese then leased back to RST pursuant to the OOLA.

66.     Under the terms of his Conditional Lease Agreement with RST, Darkese had the obligation to pay 132 weekly installments of principal and interest at the rate of $725.00 per week

beginning on or about May 14, 2024 through on or about November 17, 2026. At that time, Darkese would have the option to purchase the Darkese 2022 Mack for a "balloon payment" of $30,657.93.

67. Based on the violations described below, Darkese decided to terminate his OOLA with RST effective on or about October 26, 2024. He also returned the Darkese 2022 Mack to RST at or about that same time.

**F.   KEY TERMS**

68. Each OOLA defines the term "Carrier" to refer to RST, the term "Contractor" to refer to the Owner, and the term "Equipment" to refer to the "motor carrier equipment described in Appendix A"—(i) in Hatton's case, the Freightliner; (ii) in Garcia's case, the Garcia 2022 Mack and (iii) in Darkese's case, the Darkese 2022 Mack.

69. Each OOLA qualifies as a "lease" for purposes of the TILR in that each is a contract in which the Owner grants the use of equipment, with a driver, for a specified period to RST, an authorized carrier, for use in the regulated transportation of property, in exchange for compensation. *See* 49 C.F.R. § 376.2€

70. The "lessor" for purposes of the TILR means: "[i]n a lease, the party granting the use of equipment, with or without driver, to another." *See* 49 C.F.R. § 376.2(f). In the case of the OOLA, the Contractor would be the "lessor."

71. The "lessee" for purposes of the TILR means: "[i]n a lease, the party acquiring the use of equipment, with or without driver, from another." *See* 49 C.F.R. § 376.2(g). In the case of the OOLA, the Carrier (RST) would be the "lessee."

## The TILR Violations

**A.  Untimely Payment of Compensation**

### *i.  Section 376.12(f)*

72.    The TILR requires that a lease contain payment terms governing when the carrier

must pay an Owner for its services.  Section 376.12(f) provides, in full:

> (f) Payment period. The lease shall specify that payment to the lessor shall be made within 15 days after submission of the necessary delivery documents concerning a trip in the service of the authorized carrier. The documentation required before the lessor can receive payment is limited to log books required by the Department of Transportation and those documents necessary for the authorized carrier to secure payment from the shipper.  In addition, the lease may provide that, upon termination of the lease agreement, as a condition precedent to payment, the lessor shall remove all identification devices of the authorized carrier and, except in the case of identification painted directly on equipment, return them to the carrier. If the identification device has been lost or stolen, a letter certifying its removal will satisfy this requirement. Until this requirement is complied with, the carrier may withhold final payment.  The authorized carrier may require the submission of additional documents by the lessor but not as a prerequisite to payment.  Payment to the lessor shall not be made contingent upon submission of a bill of lading to which no exceptions have been taken. The authorized carrier shall not set time limits for the submission by the lessor of required delivery documents.

*See* 49 C.F.R. § 376.12(f).

73.    The second paragraph of section 4.1 of the OOLA addresses the time of payment

and related documentation.  Section 4.1 provides, in relevant part:

> 4.1. Payment.
>
> …
>
> **CARRIER** shall pay **CONTRACTOR** for completed use of the equipment. **CONTRACTORS** will be paid 6 weeks in arrears (or sooner if **CARRIER** desires) after **CONTRACTOR** turns in to **CARRIER** the properly prepared and executed paperwork. The paperwork includes signed delivery tickets, bills of lading, driver's logs, inspection reports and other trip documents **CARRIER** needs to secure payment from shippers. **CARRIER** may require **CONTRACTOR** to furnish additional trip documents, but this is not necessary for payment.

*See* OOLA § 4.1.

74.    The OOLA does not provide for the withholding of payment pending removal of identifying devices.

ii.    **_Violations of Section 376.12(f) Causing Damages Common to All Class Members_**

75.    On information and belief, RST commits violations of section 376.12(f) that are common to all class members and that result in damages common to all class members.

76.    The OOLA violates section 376.12(f) in that it does not specify that payment to the RST Contractor shall be made within 15 days after submission of the necessary delivery documents concerning a trip in the service of RST.

77.    In addition, RST manages deliveries through a computerized system which RST Contractors are able to access remotely while working.  Through this computerized system, RST Contractors automatically submit to RST the necessary delivery documents for the transported cargo as soon as it has been delivered.  RST then receives the necessary paperwork that same day.

78.    Notwithstanding this automated system, RST, as a business practice, does not pay its RST Contractors for deliveries until at least six weeks has passed.  As such, RST, by its business practices, violates both section 376.12(f) and the prefatory paragraph of section 376.12 in that it does not adhere to or perform its obligation to pay RST Contractors within 15 days after submission of the necessary delivery documents.  RST commits this violation through three separate business practices.

79.    First, notwithstanding section 376.12(f), RST does not pay RST Contractors under any circumstances until six weeks after an RST Contractor performs the services for which it is paid.  By way of example only, Darkese began performing transportation services for RST pursuant to his OOLA on March 26, 2024.  However, he did not get his first payment from RST

for the work he performed from March 26, 2024 through March 30, 2024 until on or after May 14, 2024.  Thereafter, RST consistently paid Darkese six weeks (or more) in arrears.

80.    Likewise, RST consistently paid Hatton and Garcia six weeks (or more) after they had performed services.  For instance, RST paid Hatton on or after February 25, 2025, for deliveries Hatton made during the period from January 12, 2025, to January 18, 2025.  Likewise, by way of example only, on May 18, 2025, RST paid Garcia for deliveries Garcia made from March 30, 2025, through April 5, 2025.

81.    Second, as a business practice, RST typically schedules RST Contractors to work a minimum of four days per pay period.  If an RST Contractor is unable to work at least four days during such pay period, RST will not pay that RST Contractor even though the RST Contractor had performed services for RST six weeks prior.  Instead, RST will withhold payment until the RST Contractor performs services for at least four days during a subsequent pay period.

82.    For instance, during the week of May 22, 2024, Darkese was unable to work.  So, RST did not pay him that week, even though Darkese had performed services for RST six weeks prior (from April 1, 2024 through April 5, 2024), for which he had still not been paid.  In other words, Darkese did not receive compensation for the services he rendered from April 1, 2024 through April 5, 2024, until on or after May 28, 2024, that is, more than seven weeks in arrears.

83.    Similarly, during the week of September 12, 2024, Darkese was, once again, unable to work one out of the four days he was scheduled to perform services for RST as his daughter had a condition for which she needed to be hospitalized.  Despite knowing why Darkese had been unable to work, RST, once again, withheld payment to Darkese for that week even though Darkese had performed services for RST six weeks prior (from August 5, 2024 through August 8, 2024), for which he still had not been paid.  In other words, Darkese did not receive compensation for the

services he rendered from August 5, 2024 through August 8, 2024 until on or after September 24, 2024, that is, more than seven weeks in arrears.

84.     On both occasions, Darkese spoke with Maronen who reaffirmed that Darkese would not be paid if he did not work at least four days during that pay period.  On the first occasion, Maronen explained that an RST Contractor needed to be "six weeks in arrears" before RST would pay the contractor and that less than four days did not count as a full week.

85.     In one instance, RST paid Garcia more than two and a half months in arrears.  In that instance, a trailer hose Garcia used to load cargo developed a pinhole leak.  RST wanted Garcia to replace that hose by purchasing from RST another used trailer hose RST had in its possession.  Thereafter, Garcia obtained a replacement trailer hose on his own, but RST refused to put Garcia on its delivery schedule until Garcia replaced the leaking hose with a hose of the same brand as the used trailer hose RST had offered to sell to Garcia.  It took three weeks for Garcia to get a replacement trailer hose from the manufacturer that matched the brand of RST's used trailer hose.  During the interim, RST refused to put Garcia on the schedule and refused to pay him any compensation for the work he had performed six weeks prior.

86.     Previously, RST also withheld payment from Garcia for two weeks while he was on vacation even though he had worked four days the six weeks prior to each such week.  At that time, Maronen advised Garcia that he would not be paid until the next pay period that he worked four days.  When Garcia asked Maronen why, Maronen replied "It's in our contract."  When Garcia asked Maronen to show him where in the contract it said that, Maronen told him "you need to look for it yourself."

87. Third, when an RST Contractor stops performing services for RST, RST withholds payment from the RST Contractor until six weeks have passed since the RST Contractor last performed services.

88. For example, Darkese received his last settlement payment from RST on October 29, 2024 for work Darkese had performed from September 11, 2024 through September 13, 2024. Thereafter, RST did not compensate Darkese for the services Darkese performed through his termination on October 26, 2024 or provide Darkese with any settlement statements for such work until RST provided Darkese with a final settlement statement on or about January 13, 2025.

89. Similarly, when RST instructed Hatton to return the vehicle he had been renting from RST to RST, on February 28, 2025, Hatton could no longer perform services for RST. However, RST did not make payment to Hatton for the services he had rendered from January 19, 2025, through February 28, 2025, until on or after March 19, 2025.

90. Accordingly, as a result of the violations described in paragraphs 76 and 78, Plaintiffs, individually, and the Owners as a class, have suffered injury in that, among other things: (i) they do not have a basis in the OOLA for demanding payment upon the expiration of 15 days; (ii) they have not received the compensation due them within the time period mandated by law; and (iii) the lack of such contract term and delay in payment decreases the bargaining power of RST Contractors and increases the leverage RST exercises over them.

91. In addition, Plaintiffs, individually, and the Owners as a class, have sustained damages as a result of the violations described in paragraphs 76 and 78 in an amount equal to the lost time value of the compensation due them during the period RST improperly delays payment for more than 15 days.

### iii. *Common Violations of Section 376.12(f) Causing Damage Specific to a Subclass of Class Members*

92.     On information and belief, RST also commits violations of section 376.12(f) common to all class members but that result in damages specific to a subclass of class members, which subclass includes Hatton and Darkese.

93.     In particular, RST uses the violations described in paragraphs 76 and 78 in combination with other violations described below to further deprive RST Contractors who have ceased performing services for RST of the compensation due them for such services. The subclass consists of those class members whose OOLA has terminated or who have otherwise ceased performing services for RST pursuant thereto.

94.     For example, as described in paragraph 88, Darkese did not receive his final statement from RST until January 13, 2025. As of that date, he had not received any compensation for the period he had worked from September 16, 2024, through October 26, 2024.

95.     Despite that Darkese was due at least $12,887.76 in compensation for the work he had performed from September 16, 2024, through October 26, 2024, RST paid him nothing for that period, claiming that RST was entitled to certain deductions from his compensation that exceeded that amount. These inappropriate deductions included, among other things: (i) weekly payments for the Darkese 2022 Mack from April 2, 2024 through May 7, 2024 even though the first payment was not due under the Darkese Conditional Lease Agreement until May 14, 2024, which payment had been made as of that date; (ii) $18,932.65 in repairs to the Darkese 2022 Mack and the RST trailer Darkese had been using, which repairs RST purported to have made after Darkese had returned both the Darkese 2022 Mack and the trailer to RST; (iii) "Missed Accident Policy Payments" for April and May 2024 even though Darkese never received a certificate of insurance for this coverage or any other documentation validating that this insurance had been

obtained for him; and (iv) missed "Truck Insurance Payments" even though Darkese never received a certificate of insurance for this coverage. RST also calculated Darkese compensation using rates that were less than the per barrel rates contained in the rate sheet that RST attached to his OOLA.

96.     Similarly, when RST instructed Hatton to return the vehicle he had been renting from RST to RST, on February 28, 2025, Hatton could no longer perform services for RST. However, RST did not make payment to Hatton for the services he had rendered from January 19, 2025, through February 28, 2025, until on or after March 19, 2025.

97.     At that time, as with Darkese, RST wrongly deducted from Hatton's settlement on or about March 19, 2025: (i) a rental fee for the loaner truck for March 1, 2025 (even though Hatton had not performed any work for RST that day); (ii) $11,284.13 in work orders, including a 15% mark-up, for maintenance to RST's trailer and loaner truck and to repair damage to RST's trailer that were performed after Hatton returned both vehicles; (iii) $549 for a "Missed Accident Policy Balance"; and (iv) $2,240.89 for a "Missed Insurance Balance." Accordingly, as with Hatton, RST also used its practice of delaying payment in violation of TILR to wrongfully deduct from Darkese's compensation costs that it was not entitled to deduct under the terms of the OOLA.

98.     As such, Darkese and Hatton, individually, and the subclass of Owners described in paragraph 92 have suffered further damage as a result of the violations described in paragraphs 76 and 78 as RST has used such violations in combination with other violations to not just delay but to deprive Darkese and Hatton, individually, and such subclass of Owners of compensation due them for their services entirely.

B.   UNDERPAID COMPENSATION

    *i.*   <u>**Section 376.12(d)**</u>

99.    The TILR also require that an Owner's compensation be clearly stated in the lease or an addendum thereto prior to the commencement of any trip in service to the carrier.  Section 376.12(d) provides, in full, that:

> (d) ***Compensation to be specified***. The amount to be paid by the authorized carrier for equipment and driver's services shall be clearly stated on the face of the lease or in an addendum which is attached to the lease. Such lease or addendum shall be delivered to the lessor prior to the commencement of any trip in the service of the authorized carrier. An authorized representative of the lessor may accept these documents. The amount to be paid may be expressed as a percentage of gross revenue, a flat rate per mile, a variable rate depending on the direction traveled or the type of commodity transported, or by any other method of compensation mutually agreed upon by the parties to the lease. The compensation stated on the lease or in the attached addendum may apply to equipment and driver's services either separately or as a combined amount.

*See* 49 C.F.R. § 376.12(d).  Section 376.2(i) defines an addendum as a "supplement to an existing lease which is not effective until signed by the lessor and lessee."  *See* 49 C.F.R. § 376.2(i).

100.    Section 4.1 and Appendix B contain the only provisions of the OOLA relevant to section 376.12(d).  The first paragraph of section 4.1 of the OOLA provides, in full, that:

> 4.1. **Payment. CARRIER** shall pay **CONTRACTOR** for each trip **CONTRACTOR** makes under this Agreement according to the Schedule of Compensation in Appendix B, which is attached to and made part of this agreement. To modify Appendix B, the parties must either (a) note the modification on Appendix B and initial it, or (b) substitute a new Appendix B and sign and date it.

*See* OOLA § 4.1.  Appendix B provides, in full:

> A.  CARRIER agrees to pay CONTRACTOR the following ( See attached sheet for rate of pay ) (Determined by barrels hauled and mileage of delivery ) revenue paid to the CARRIER and earned by the equipment identified in Appendix A of the Owner Operator Lease Agreement:
>
> B.  Any additional revenues due CONTRACTOR from CARRIER i.e. rejects, & detention will be addressed on a per-customer basis.

*See* OOLA, Appx. B.

*ii.* *Violations of Section 376.12(d) Causing Damages Common to All Class Members*

101.    On information and belief, RST commits violations of section 376.12(d) that are common to all class members and that result in damages common to all class members.

102.    Standing alone, Paragraph B of Appendix B of the OOLA violates section 376.12(d) as the "additional revenues due CONTRACTOR from CARRIER" are not clearly stated on the face of the OOLA or in an addendum which is attached to the OOLA.

103.    To begin, Paragraph B of Appendix B specifically mentions "rejects" and "detention". The DOT defines detention as the holding by a consignor or consignee of a trailer, with or without power unit and driver, beyond the free time allocated for the shipment, under circumstances not attributable to the performance of the carrier. *See* 49 C.F.R. § 376.2(m). Rejects refers to fees assessed by the carrier when a consignee fails to receive or accept crude oil at a designated destination within a specified time. However, Paragraph B of Appendix B does not clearly state the amount to be paid by RST for such rejects or detention.

104.    Likewise, the additional revenues customers pay for RST's deliveries services include other additional revenues for which the RST Contractor making the delivery is to be compensated. However, Paragraph B of Appendix B does not clearly state what those unspecified additional revenues might be, much less the amount to be paid by RST for such additional revenues.

105.    By way of example only, on information and belief, some of the parties contracting for deliveries, such as "Shell" and "Kinder Morgan," paid RST a fuel surcharge, which payment was intended to reimburse RST Contractors for their fuel costs, that is, the cost of the fuel they consumed making a delivery. From time to time, each of Plaintiffs received such a "fuel

surcharge" for some, but not all, of their deliveries.  However, of the three, the only OOLA which referenced a fuel surcharge was Garcia.

106.    In Garcia's case, the rate sheet initially attached to Garcia's OOLA included the phrase "plus fuel surcharge when applicable."  However, the rate sheet was later replaced with a revised rate sheet that did not specifically mention this fuel surcharge (although Garcia and other RST Contractors continued to receive compensation identified on their settlement statements as a "fuel surcharge" from time to time).

107.    As a result of the violation described in paragraph 102, Plaintiffs, individually, and the Owners as a class, have suffered injury in that: (i) they have been deprived of the ability to detect whether they have been underpaid certain unspecified "additional revenues" (such as fuel surcharges) to which they are entitled under the terms of the OOLA; (ii) they have been deprived of the ability to detect whether they have been underpaid for those additional revenues the OOLA specifically mentions (such as rejects and detention); (iii) they have been underpaid unspecified "additional revenues" (such as fuel surcharges) to which they are entitled under the terms of the OOLA; and (iv) they have been underpaid compensation to which they are entitled for those additional revenues the OOLA specifically mention (such as rejects and detention).

108.    As such, Plaintiffs, individually, and the Owners as a class have sustained damages as a result of the violation described in paragraph 102 in the amount by which they have been underpaid such compensation.

### iii.    Section 376.12(g)

109.    The TILR also require that a lease contain provisions requiring the carrier to provide an Owner with certain documentation related to the Owner's compensation.  Section 376.12(g) provides, in full:

> (g) ***Copies of freight bill or other form of freight documentation***. When a lessor's revenue is based on a percentage of the gross revenue for a shipment, the lease must specify that the authorized carrier will give the lessor, before or at the time of settlement, a copy of the rated freight bill, or, in the case of contract carriers, any other form of documentation actually used for a shipment containing the same information that would appear on a rated freight bill. Regardless of the method of compensation, the lease must permit lessor to examine copies of the carrier's tariff or, in the case of contract carriers, other documents from which rates and charges are computed, provided that where rates and charges are computed from a contract of a contract carrier, only those portions of the contract containing the same information that would appear on a rated freight bill need be disclosed. The authorized carrier may delete the names of shippers and consignees shown on the freight bill or other form of documentation.

*See* 49 C.F.R. § 376.12(g).    This disclosure requirement protects Owners from unscrupulous carriers who might be tempted to hide such information, to underpay for the shipment, and then pocket the difference.

110.    The second sentence of section 376.12(g) applies whenever any of the documentation described is necessary to determine the compensation due an Owner.

### iv.    Violations of Section 376.12(g) Causing Damages Common to All Class Members

111.    On information and belief, RST commits violations of section 376.12(g) that are common to all class members and that result in damages common to all class members.

112.    Both the terms of the OOLA and RST business practices violate section 376.12(g). As set forth above, paragraph B of Appendix B provides that:

> C.  Any additional revenues due CONTRACTOR from CARRIER i.e. rejects, & detention will be addressed on a per-customer basis

*See* OOLA, Appx. B.    However, nowhere does the OOLA state what documentation, if any, may be obtained by the RST Contractor concerning what additional revenues, if any, the RST Contractor may be due for any specific customer.

113.    As such, the OOLA violates section 376.12(g) in that the OOLA does not contain any language that permits the RST Contractor to examine copies of RST's tariff or other documents from which rates and charges are computed.

114.    At one point, RST reduced the amount of compensation it paid RST Contractors for fuel surcharges.  During a meeting between RST and RST's Contractors, Garcia asked RST (Maronen) whether they could obtain copies of RST's contracts with its customers to validate that they were being properly compensated for fuel surcharges.  RST (Maronen) replied that RST would "never share that information with any driver."

115.    Consistent therewith, RST has a policy of not providing RST Contractors with tariffs or other documents from which rates and charges are computed.

116.    As such, RST violates section 376.12(g) and the prefatory paragraph of section 376.12 in that it does not, in practice, adhere to or perform its obligation under section 376.12(g) to permit RST Contractors to examine copies of RST's tariffs or, in the case of contract carriers, other documents from which rates and charges are computed.

117.    As a result of the violations described in paragraph 113 and 116, Plaintiffs, individually, and the Owners as a class, have suffered injury in that: (i) they have been deprived of the ability to detect whether they have been underpaid for certain unspecified "additional revenues" (such as fuel surcharges) to which they are entitled under the terms of the OOLA; (ii) they have also been deprived of the ability to detect whether they have been underpaid for those additional revenues the OOLA specifically mentions (such as rejects and detention); (iii) they have been underpaid for unspecified "additional revenues" (such as fuel surcharges) to which they are entitled under the terms of the OOLA; and (iv) they have been underpaid

compensation to which they are entitled for those additional revenues the OOLA specifically mentions (such as rejects and detention).

118.    As such, Plaintiffs, individually, and the Owners as a class, have sustained damages as a result of the violations described in paragraphs 113 and 116 in the amount to which they have been underpaid such compensation.

### v.    *Common Violations of Section 376.12(d) Causing Damage to a Subclass of Class Members*

119.    On information and belief, RST also commits violations of section 376.12(d) that are common to all class members but that result in damages specific to a subclass of class members, which subclass includes Hatton and Garcia.  This subclass consists of those class members whose compensation has been reduced as a result of RST's business practice of unilaterally modifying the compensation due RST Contractors by providing them with revised rate sheets.

120.    As illustrated in paragraph 106, as a business practice, RST, from time to time, unilaterally modifies the compensation it pays to RST Contractors by providing RST Contractors with revised rate sheets, that is, by providing the RST Contractors with rate sheets containing revised rates that RST treats as effective even though RST Contractors do not sign such revised rate sheets.  By way of example only, in addition to Garcia (as illustrated in paragraph 106), Hatton from time to time has received rate sheets from RST that RST contends modified the compensation to be paid him pursuant to his OOLA even though Hatton did not sign or initial such revised rate sheets.  On information and belief, at the time such revised rate sheets were provided to Hatton, all of the RST Contractors performing services for RST pursuant to OOLAs were provided such revised rate sheets.

121.    Given such business practice, an ambiguity may exist as to whether RST, notwithstanding section 4.1, may modify the compensation of RST Contractors by providing RST

Contractors with rate sheets containing revised rates even though RST Contractors do not sign such revised rate sheets.

122.     To the extent that the OOLA can be construed so as to permit RST to unilaterally modify the compensation of RST Contractors by providing revised rate sheets to such RST Contractors, the OOLA violates section 376.12(d) and section 376.2(i) in that the amount to be paid by RST for equipment and driver's services is not clearly stated on the face of the OOLA or in an addendum which is attached to the OOLA.

123.     Alternatively, RST's business practice of unilaterally modifying the compensation it pays to RST Contractors by providing the RST Contractors with revised rate sheets violates both section 376.12(d) and the prefatory paragraph of section 376.12 in that RST does not adhere to or perform section 4.1 of the OOLA which only permits the parties to modify Appendix B by noting the modification on Appendix B and initialing it, or by substituting Appendix B with a new Appendix B that the parties have signed and dated.

124.     In addition, or in the alternative, whether or not permitted by the terms of the OOLA, RST's business practice of unilaterally modifying the compensation it pays to RST Contractors by providing the RST Contractors with revised rate sheets violates section 376.12(d) and section 376.2(i) as unsigned revised rate sheets do not qualify as an addendum to the OOLA. As such, RST violates section 376.12 by failing to clearly state the amount to be paid the RST Contractor on the face of the OOLA or in an addendum which is attached to the OOLA.

125.     As a result of the violations described in paragraphs 122, 123, and 124, Garcia and Hatton, individually, and the subclass of Owners described in paragraph 119 have suffered injury in that: (i) they have been deprived of their bargaining power to the extent that: (a) the terms of the OOLA permit RST to unilaterally modify the compensation to be paid RST Contractors, or

(b) RST by its business practices does so in violation of the terms of the OOLA and the TILR; and (ii) they have been underpaid the compensation due them pursuant to the terms of the OOLA to the extent that such revised rate sheets reduced the compensation due them under the terms of the OOLA.

126.    As a result of the violations described in paragraphs 122, 123, and 124, where revised rates sheets have reduced the compensation to be paid to RST Contractors, Plaintiffs, individually, and the subclass of Owners described in paragraph 119 have also sustained damages in the amount by which such compensation was reduced.

**C.    COMPENSATION UNDERPAID AS A RESULT OF EXCESSIVE DEDUCTIONS**

127.    In the transportation industry, Authorized Carriers, such as RST, will pay directly certain costs incurred by Owners and then deduct such costs from the compensation due Owners for their services.  The TILR and/or industry participants typically refer to the accounting for such costs as settlement, the payment of the Owner after the deduction of such costs as a settlement payment, and the record of the accounting for such costs and payment as the settlement statement.

128.    Other costs Owners pay directly out of pocket.  The TILR contain provisions that govern both settlement deductions and out-of-pocket costs.

### *i.    Section 376.12(e)*

129.    The TILR require a lease to clearly specify who will be responsible for certain costs. The third sentence of section 376.12(e) provides that:

> The lease shall clearly specify the responsibility of each party with respect to the cost of fuel, fuel taxes, empty mileage, permits of all types, tolls, ferries, detention and accessorial services, base plates and licenses, and any unused portions of such items.

*See* 49 C.F.R. § 376.12(e).

130.    Section 5.6 of the OOLA addresses responsibility for costs.  Section 5.6 provides, in full:

**5.6. Payment of Costs**. **CONTRACTOR** shall pay all costs of operation of the equipment. The costs for which **CONTRACTOR** is responsible include, but are not limited to, the following:

(a) All motor fuel, fuel taxes, oil, tires and all equipment, accessories, or devises required to comply with applicable rules and regulations;

(b) All maintenance costs, and the costs of all repairs needed to operate the equipment in a safe and efficient manner;

(c) All taxes and assessments, premiums and other payments due;

(d) The contractor shall pay a percentage (100%) of the base plate fees; however, the IRP base plate is the property of the carrier and shall be returned to the carrier upon termination of this agreement.

(e) Carrie will supply contractor with their IRS 2290 each year to be deducted from their settlement sheet.

(f) All types of license and permits required by rules and regulations for the equipment or for its operation, and any tax payments including all reports connected with taxes or licenses. Licenses or permits may be issued in the name of **CARRIER** to comply with and regulations;

(g) Fines and penalties arising out of the use of the equipment, where the fines and penalties result from the **CONTRACTOR'S** acts or omissions;

(h) Worker's Compensation insurance; If Contractor has employees

(i) Comprehensive insurance coverage for collision, fire and theft;

(i) Any expenses incurred as the result of detention of the equipment or of the provision of accessorial services;

(k) All expenses incurred in connection with loading and unloading property onto and from the equipment, unless otherwise specified in **CARRIER'S** tariff,

(i) All other expenses necessary to operate the equipment.

*See* OOLA § 5.6.

### ii.    *Violations of Section 376.12(e) Causing Damages Common to All Class Members*

131.    On information and belief, RST commits violations of section 376.12(e) that are common to all class members and that result in damages common to all class members.

ORIGINAL CLASS ACTION COMPLAINT – PAGE 32

132.    As a part of the services Plaintiffs and other RST Contractors render pursuant to the OOLA, they are required to drive to loading sites and from unloading sites without cargo ("empty mileage").  As a part of its business practices, RST does not compensate RST Contractors, including Plaintiffs, for such empty mileage.

133.    The OOLA violates the third sentence of section 376.12(e) in that section 5.6 fails to clearly specify who will be responsible for, among other things, the cost for empty mileage and tolls.

134.    Section 5.6(l) and the phrase "include, but are not limited to" in the prefatory paragraph of section 5.6 of the OOLA also violate section 376.12(e) in that they fail to clearly specify the costs for which an RST Contractor may be responsible.

135.    As a result of the violations described in paragraphs 133 and 134, Plaintiffs, individually, and the Owners as a class, have suffered injury in that: (i) they have been deprived of the ability to detect whether they have been underpaid compensation by paying out-of-pocket for empty mileage or tolls; and (ii) they have been underpaid compensation as a result of having paid out-of-pocket the cost of empty mileage or tolls.

136.    As such, Plaintiffs, individually, and the Owners as a class, have  sustained damages as a result of the violations described in paragraphs 133 and 134 in an amount equal to amounts they have paid out-of-pocket for empty mileage or tolls.

### iii.    *Section 376.12(h)*

137.    The TILR also require that a lease contain certain provisions related to "Charge-Back items," that is, amounts that may be initially paid for by the carrier, but ultimately deducted from the Owner's compensation at the time of payment or settlement.  Section 376.12(h) provides, in full:

> **(h)** ***Charge-back items***. The lease shall clearly specify all items that may be initially paid for by the authorized carrier, but ultimately deducted from the lessor's compensation at the time of payment or settlement, together with a recitation as to how the amount of each item is to be computed. The lessor shall be afforded copies of those documents which are necessary to determine the validity of the charge.

*See* 49 C.F.R. § 376.12(h).

138.    Section 376.12(h) has three requirements.  First, the lease must clearly specify the items that "may be initially paid for by the authorized carrier but ultimately deducted from the [Owner's] compensation at the time of payment or settlement."  Second, the lease must recite "how the amount of each item is to be computed."  Finally, the Owner must be "afforded copies of those documents which are necessary to determine the validity of the charge."

139.    Section 5.9 of the OOLA specifically addresses chargebacks.  Section 5.9 provides, in full:

> 5.9. Advances. Contractor shall not charge any expenses to **CARRIER**. If **CARRIER** pays any of **CONTRACTOR'S** cost of operation as listed in Paragraphs 5.2, 5.5 and 5.6 the payment is considered an advance to **CONTRACTOR**, and **CARRIER** may reimburse itself out of any money due or becoming due to **CONTRACTOR**.

*See* OOLA § 5.9.

140.    Thus, section 5.9 of the OOLA permits RST to reimburse itself for any "cost of operation" listed in section 5.2, section 5.5, or section 5.6.

### iv.    *Violations of Section 376.12(h) Causing Damage Common to All Class Members*

141.    On information and belief, RST commits violations of section 376.12(h) that are common to all class members and that result in damages common to all class members.

### a.    Comprehensive Collision Insurance

142.    Section 5.6 of the OOLA includes among the costs for which an RST Contractor will be responsible comprehensive collision insurance for the equipment the RST Contractor leases to RST.  Section 5.6 provides, in relevant part:

> **5.6. Payment of Costs**. **CONTRACTOR** shall pay all costs of operation of the equipment. The costs for which **CONTRACTOR** is responsible include, but are not limited to, the following:
>
> …
>
> (i) Comprehensive insurance coverage for collision, fire and theft; ….

*See* OOLA § 5.6.

143.    As a business practice, RST deducts a weekly insurance payment ("Weekly Insurance Payment") from RST Contractor settlements.

144.    RST advises RST Contractors that this Weekly Insurance Payment is "insurance on the truck", that is, premiums for comprehensive collision insurance or, put another way, insurance for the benefit of the RST Contractor that includes payment for the loss of or physical damage to an RST's Contractors leased equipment in the event of an accident.

145.    Following Hatton's accident, a disagreement developed between RST and Hatton over the amount due to Hatton from an insurance claim that RST had made on Hatton's behalf for the damage caused to Hatton's Freightliner by the accident.  As a result, counsel for Hatton requested and received from the insurance company, Great Western Casualty Company ("GWCC"), a copy of the policy ("GWCC Policy") for which RST Contractors, including Hatton, had been paying.

146.    After reviewing the GWCC Policy, Hatton realized that GWCC was charging RST premiums for the GWCC Policy at a rate of $392.00 per month per auto and $0.30 per month per $1,000 of value.

147.    On information and belief, Hatton's Freightliner had a value at the inception of the policy period of the GWCC Policy (October 3, 2024) of $67,000 or less.

148.    Together, premiums for Hatton and his Freightliner at these rates would be equal to a premium of approximately $412.10 per month, or $4,945.20 per year.

149.    While the GWCC Policy was in effect, RST deducted a Weekly Insurance Payment from the settlements of RST Contractors, including Hatton, at a rate of $296.80 **per week**, or $15,433.60 per year.

150.    Together, these excessive deductions reduce an RST Contractor's compensation by over $10,000.00 per year.

151.    By its express terms, section 5.9 only permits RST to reimburse itself for any "cost of operation" it pays on behalf of an RST Contractor, which cost of operation expressly includes the cost of comprehensive collision insurance, that is, the premiums actually charged by the insurance company for coverage for loss of or damage to the leased equipment.

152.    As a result of its business practices, RST violates both section 376.12(h) and the prefatory paragraph of section 376.12 in that RST fails to adhere to or perform section 5.6 and section 5.9, by deducting from RST Contractor payments or settlements an amount that exceeds the amount required to reimburse RST for the "cost" of such insurance.

153.    In addition, the OOLA, taken as a whole, including section 5.6 and section 5.9, in particular, violates section 376.12(h) in that the OOLA fails to clearly specify how the amount deducted for comprehensive collision insurance is to be computed given, for example, that the GWCC Policy includes multiple lines of insurance and calculates premiums at a per auto and per $1,000 value rate.

154.    Additionally, or in the alternative, RST violated section 376.12(h) by failing to provide to RST Contractors the documentation needed to validate the deductions being made to RST Contractor payments or settlements for such insurance.

155.    As a result of the violations described in paragraphs 152, 153, and 154, Plaintiffs, individually, and the Owners as a class, have suffered injury in that: (i) they have been deprived

of the ability to detect whether they have been underpaid compensation as a result of any such deductions; and (ii) they have been underpaid compensation as a result of deductions for insurance from their payments or settlements that exceed the actual premiums for such insurance.

156.    Accordingly, Plaintiffs, individually, and the Owners as a class, have also sustained damages as a result of the violations described in paragraphs 152, 153, and 154 in the amount of such underpayments.

**b. <u>Physical Damage and Cargo Insurance Covering the Equipment</u>**

157.    Apart from section 5.9, section 5.7(a) permits RST to deduct certain "insurance costs" from RST Contractor settlements.  Section 5.7(a) provides, in full:

> **5.7.  Insurance.**
>
> (a) Federal Highway Safety Administration regulations require **CARRIER** to maintain insurance coverage for the protection of the public. **CARRIER** shall furnish public liability; property damage and cargo insurance covering the equipment **CONTRACTOR** operates in the service of **CARRIER**. **CONTRACTOR** is liable for the first $500.00 of loss for property damage and or bodily injury in a preventable accident or incident. **CONTRACTOR** can purchase comprehensive & collision coverage on their own or can choose to get coverage through **CARRIER**'s insurance policy and will have all associated insurance costs deducted from **CONTRACTOR'S** settlements.

*See* OOLA § 5.7(a).  The Most Recent Version of the OOLA has changed the dollar figure in section 5.7 from $500.00 to $25000.00.

158.    FMCSA regulations require motor carriers to have in effect minimum levels of financial responsibility.  *See* 49 C.F.R. § 387.7.

159.    Under the applicable regulations, "[f]inancial responsibility means the financial reserves (e.g., insurance policies or surety bonds) sufficient to satisfy liability amounts … covering public liability."  *See* 49 C.F.R. § 387.5.  "Public liability means liability for bodily injury or property damage and includes liability for environmental restoration."

160.    On information and belief, the Weekly Insurance Payment that RST deducts from RST Contractor weekly settlements as described in paragraphs 59, 143, 144, and 149 was for the coverage afforded by the GWCC Policy.  On information and belief, during prior policy years, a similar Weekly Insurance Payment that RST deducted from its contractors' weekly settlements was for the same types of coverage.

161.    The coverage afforded by the GWCC Policy includes not only the public liability insurance mandated by the FMCSA regulations but also coverage for physical damage to the leased equipment and cargo insurance for the cargo transported by RST Contractors.

162.    For example, the GWCC Policy provides for physical damage insurance in the Commercial Auto Coverage Part of the GWCC Policy.  The GWCC Policy provides for cargo insurance in the Texas Commercial Inland Marine Conditions−Cargo Coverage of the GWCC Policy.  The Commercial Auto Coverage Part of the GWCC Policy also includes an "Endorsement for Motor Carrier Policies of Insurance for Public Liability Under Sections 29 and 30 of the Motor Carrier Act of 1980."

163.    In effect, RST agreed to furnish "property damage and cargo insurance covering the [leased] equipment" but then deducted the cost for the insurance it agreed to furnish from RST Contractors.

164.    By its express terms, section 5.7(a) makes RST responsible for furnishing public liability, property damage, and cargo insurance covering the leased equipment and thus for the payment of the premiums for such insurance.

165.    By its business practices, RST has violated section 376.12(h) and the prefatory paragraph of section 376.12 as RST did not adhere to or perform its obligation under section 5.7(a) to furnish public liability, property damage, and cargo insurance covering the leased equipment

and has, instead, made RST Contractors responsible for furnishing such insurance in that RST had deducted premiums for such insurance from the compensation of RST Contractors.

166.    By its express terms, section 5.7(a) only permits RST to deduct insurance costs associated with comprehensive & collision coverage from an RST Contractor's payment or settlement.

167.    By its business practices, RST has violated section 376.12(h) and the prefatory paragraph of section 376.12 as RST did not adhere to or perform its obligation under section 5.7(a) in that it deducted premiums for insurance other than comprehensive & collision coverage from the compensation due RST Contractors.

168.    Alternatively, ambiguity may exist, given RST's business practices, as to whether section 5.7(a) makes an RST Contractor responsible for the payment of premiums or any other cost for public liability, property damage and cargo insurance covering the leased equipment.  On the one hand, section 5.7(a) can be read to provide that the RST Contractor can choose to get "comprehensive & collision coverage" through RST's policy and, if it does, "all associated insurance costs" will be deducted from the RST Contractor's payments or settlements for such comprehensive & collision coverage, that is, x or (y and z).  It can also potentially be read so as to require the RST Contractor to reimburse RST for the cost of the public liability, property damage and cargo insurance coverage whether or not an RST Contractor chooses to purchase comprehensive & collision coverage through RST, that is, (x or y) and z.

169.    Accordingly, additionally, or in the alternative, section 5.7(a) of the OOLA violates section 376.12(h) in that it does not clearly specify whether the cost associated with public liability, property damage, and cargo insurance covering the equipment will initially be paid by RST but ultimately deducted from the RST Contractor's payments or settlements.

170.     Accordingly, as a result of the violations described in paragraphs 165, 167 and 169, Plaintiffs, individually, and the Owners as a class, have suffered injury in that: (i) they have been deprived of the ability to detect whether they have been underpaid compensation as a result of any deductions from their payments or settlements for the cost of any public liability, property damage, and cargo insurance that RST agreed to furnish; and (ii) they have been underpaid compensation as a result of any such deductions.

171.     Accordingly, Plaintiffs, individually, and the Owners as a class, have also sustained damages as a result of the violations described in paragraphs 165, 167 and 169 in the amount of such underpayments.

172.     Additionally, or in the alternative, taken as a whole, the OOLA also violates section 376.12(h) with respect to the public liability, property damage, and cargo insurance that RST agreed to furnish in that the OOLA fails to clearly specify how any amount to be deducted for such insurance is to be computed.

173.     Additionally, or in the alternative, by its business practices, RST also violates both section 376.12(h) and the prefatory paragraph of section 376.12 in that RST fails to adhere to or perform section 5.7(a) by deducting from RST Contractor payments or settlements an amount that exceeds the amount required to reimburse RST for the "cost" of such insurance.

174.     As a business practice, RST does not provide its contractors with any information that could be used to validate either what coverages the Weekly Insurance Payments were for or whether the amounts being charged for such insurance were limited to the cost thereof.

175.     Accordingly, RST also violated section 376.12(h) by failing to provide to RST Contractors the documentation needed to validate the deductions being made to RST Contractor payments or settlements for such insurance.

176.    As a result of the violations described in paragraphs 172, 173, and 175, Plaintiffs, individually, and the Owners as a class, have suffered injury in that: (i) they have been underpaid compensation as a result of deductions from their payments or settlements for the public liability, property damage, and cargo insurance that RST agreed to furnish; (ii) they have been underpaid compensation as a result of deductions from their payments or settlements for insurance that exceed the actual premiums for such insurance; and (iii) they have been deprived of the ability to detect whether they have been underpaid compensation as a result of any such deduction.

177.    Accordingly, Plaintiffs, individually, and the Owners as a class, have also sustained damages as a result of the violations described in paragraphs 172, 173, and 175 in the amount of such underpayments.

####    c.    Occupational Accident Insurance

178.    Section 5.7(b) and the second to the last paragraph of section 7.4 of the OOLA concern Occupational Accident Insurance.  Section 5.7(b) provides, in full:

> (b) WORKERS' COMPENSATION/OCCUPATIONAL ACCIDENT INSURANCE. **CONTRACTOR** shall provide workers' compensation insurance coverage for **CONTRACTOR** (if a natural person), all of its employees and agents, anyone driving the Equipment, and any other persons required to be covered under the worker's compensation law of any state that is reasonably likely to have jurisdiction over **CONTRACTOR's** business operations and in amounts not less than the statutory limits required by such applicable state law. The worker's compensation insurance policy shall provide principal coverage in Texas as well as the state in which the work is principally localized, and shall provide "other states coverage" that excludes only North Dakota, Ohio, Washington, and Wyoming. As evidence of such coverage, **CONTRACTOR** shall provide **CARRIER** with a copy of the insurance policy declarations page for **CARRIER's** verification before operating the Equipment under this Agreement. If (a) **CONTRACTOR** is the sole owner and the sole and exclusive operator of the Equipment and (b) the state in which the work is principally localized is not Colorado, Massachusetts, Nevada, New Hampshire, New Jersey, or North Carolina, then **CONTRACTOR** may, as an alternative to obtaining workers' compensation coverage, purchase occupational accident insurance policy that the **CARRIER** has facilitated. **CONTRACTOR** will be responsible for all premiums associated with the Occupational Accident policy and **CARRIER** will deduct the premiums from **CONTRACTOR's** settlements.

*See* OOLA § 5.7(b).

179.    When Hatton entered into his OOLA, the second to the last paragraph of section

7.4 provided, in full:

> CONTRACTOR shall furnish CARRIER with the certificate of Worker's Compensation Insurance with in 24 hours after signing this Agreement. Or the carrier will enroll the contractor in occupational accident insurance at the contractor expense.
>
> The cost will be
>
> One hundred and eighty dollars each month. ($180.00).

*See* OOLA § 7.4.  In the Most Recent Version of the OOLA, the second paragraph of section 7.4

of the OOLA is identical, except that the cost referenced is $183.00 for each month.  Garcia's

OOLA, likewise, references a cost of $183.00 for each month.

180.    As a business practice, at the inception of Hatton's OOLA, RST deducted $180 per

month from an RST Contractor's compensation for "accident" insurance.  By the time of Hatton's

March 19, 2025 settlement, RST, as a business practice, deducted $183 per month from an RST

Contractor's compensation for an "Accident" policy.

181.    On information and belief, the premiums RST paid for occupational accident

insurance for RST Contractors during the Class Period were, in fact, less than $180 per month.

182.    By its express terms, section 5.7(b) only makes an RST Contractor responsible for

the premiums associated with occupational accident insurance and only authorizes RST to deduct

such premiums from an RST Contractor's settlements.

183.    As such, RST violated section 376.12(h) and the prefatory paragraph of section

376.12 as RST did not adhere to or perform section 5.7(b) when it deducted from RST Contractor

payments or settlements an amount for occupational accident insurance that exceeded the

premiums for such insurance.

184.    Nonetheless, given the "cost" quoted in section 7.4 of the OOLA, ambiguity may exist as to the amount that may be deducted from RST Contractor payments or settlements for occupational accident insurance under the terms of the OOLA.

185.    As such, in the alternative, the OOLA violates section 376.12(h) with respect to occupational accident insurance in that the OOLA fails to clearly specify how the amount deducted for occupational accident insurance is to be computed.

186.    Additionally, or in the alternative, RST violated section 376.12(h) by failing to provide to RST Contractors the documentation needed to validate the deductions being made to RST Contractor payments or settlements for occupational accident insurance.

187.    As a result of the violations described in paragraphs 183, 185 and 186, Plaintiffs, individually, and the Owners as a class, have suffered injury in that: (i) they have been deprived of the ability to detect whether they have been underpaid compensation as a result of deductions from their payments or settlements for occupational accident insurance that exceed the actual premiums for such insurance; and (ii) they have been underpaid compensation as a result of any such deductions.

188.    Accordingly, Plaintiffs, individually, and the Owners as a class, have also sustained damages as a result of the violations described in paragraphs 183, 185 and 186 in the amount of such underpayments.

### d.    Trailer Maintenance Costs

189.    RST Contractors transport crude oil using a tractor—such as Hatton's Freightliner, the Garcia 2022 Mack or the Darkese 2022 Mack—connected to a trailer suitable for transporting oil.

190.    As a business practice, RST provides RST Contractors with the trailers RST Contractors use to perform transportation services pursuant to their OOLAs.

191.    As noted above, section 5.9 identifies section 5.2 and section 5.5 of the OOLA as listing any "cost of operation" that RST may initially pay on an RST Contractor's behalf and then be entitled to be reimbursed out of any money due the RST Contractor.  Both subsections concern, among other things, certain costs and obligations associated with RST's equipment (including trailers).  The second paragraph of section 5.2 provides, in full:

> **CARRIER** may deduct from **CONTRACTOR'S** payment any claims for damage or shortage of cargo or any property damage to **CARRIER'S** equipment. **CARRIER** shall provide **CONTRACTOR** with a written explanation and itemization for any deductions made to the deduction.

*See* OOLA § 5.2.

192.    Section 5.5 provides in full:

> **5.5. Trailer and Accessorial Equipment**. If Carrier supplies the trailer equipment and the accessorial equipment ("the trailer" and "the accessories" in this provision) to **CONTRACTOR**, **CONTRACTOR** shall maintain the trailer and pay the cost of repairs for the accessories. **CONTRACTOR** is liable for the first $500.00 loss of or damage to the trailer or accessories while they are in the **CONTRACTOR'S** possession or custody. Exception: **CONTRACTOR** is not liable for loss or damage for which **CARRIER** is compensated for by insurance or otherwise. However, **CONTRACTOR** shall indemnify **CARRIER** for any loss **CARRIER** suffers even though it is covered by insurance.

*See* OOLA § 5.5  The Most Recent Version has changed the dollar figure in section 5.5 from $500.00 to $25000.00.

193.    By its express terms, section 5.5 of the OOLA does not make the RST Contractor financially responsible for trailer maintenance (as distinguished from the cost to repair trailer accessories).  RST Contractors discharge their obligation to maintain the trailers provided to them by RST by informing RST of any needed maintenance and returning those trailers to RST when such maintenance is needed.

194.    By its express terms, the OOLA, taken as a whole, does not make the RST Contractor responsible for the maintenance of other equipment an RST Contractor may rent from

RST either.  Section 5.5's terms regarding maintenance only apply to trailers and section 5.6(b) only applies to the leased equipment, that is, the equipment an RST Contractor leases to RST.

195.    As a business practice, as illustrated in paragraphs 95 and 97, RST deducts from the compensation of RST Contractors (including each of Hatton, Garcia and Darkese),[2] costs associated with the maintenance of the trailers and other equipment (such as rental trucks) provided to RST Contractors by RST (including the repair costs attributable to wear and tear on such vehicles).  In addition, some RST Contractors (including each of Hatton, Garcia and Darkese) undertake repairs on the trailers, themselves, when they learn that any costs associated with maintenance of the trailers will be deducted by RST from their compensation.  By way of example only, as mentioned in paragraph 85, Garcia paid for both the original trailer replacement hose (which Garcia was unable to return for a refund) and the second trailer replacement hose Garcia was required by RST to purchase when Garcia would not purchase a used trailer replacement hose from RST.  In that instance, Maronen advised Garcia that he would be responsible for the cost of any trailer replacement hose, that he could replace it himself or that RST could furnish it, but that, if RST furnished it, he would be required to pay for any trailer replacement hose RST furnished.

196.    As such, by its business practices, RST violates section 376.12(h) and the prefatory paragraph of section 376.12 in that RST does not adhere to or perform the OOLA, taken as a whole, or section 5.5 or section 5.9, in particular, when, as a business practice, it makes RST Contractors pay for maintenance costs for trailers and other equipment provided to RST Contractors by RST, including by deducting such maintenance costs from the RST Contractor payments or settlements.

---

[2]      On one occasion, Garcia was driving an RST loaner truck when he struck a wild animal that darted out in front of his vehicle.  RST required Garcia to bear the cost to repair a bumper that was damaged by the collision.  Sanchez communicated that obligation to Garcia when Garcia advised him of the damage.

197.    As a result of the violation described in paragraph 196, Plaintiffs, individually, and the Owners as a class, have suffered injury in that: (i) they have been underpaid as a result of their payment of or any deduction from their compensation for trailer maintenance costs (including the costs of any repairs due to wear and tear); (ii) they have been underpaid as a result of any deduction from their compensation that is due to the maintenance of other equipment provided to the RST Contractor by RST (such as a rental truck).

198.    In addition, Plaintiffs, individually, and the Owners as a class, have sustained damages as a result of the violations described in paragraph 196 in the amount of any underpayments resulting from their payment of or any deduction from their compensation for trailer maintenance costs (including the costs of any repairs due to wear and tear).

199.    In the alternative, based on RST's business practices, ambiguity may exist as to: (i) whether section 5.5 makes an RST Contractor responsible for the cost of trailer maintenance and thus whether an RST Contractor must pay or whether RST may deduct such costs from an RST Contractor's settlement pursuant to section 5.9; and (ii) whether the OOLA makes an RST Contractor responsible for the maintenance, including the cost of maintenance, of other equipment provided to an RST Contractor, such as a rental truck, and thus whether RST may deduct such costs from an RST Contractor's settlement pursuant to section 5.9.

200.    Accordingly, in the alternative, the OOLA, taken as a whole, including section 5.5 and section 5.9, in particular, violates section 376.12(h) in that the OOLA does not clearly specify what costs associated with trailers may be initially paid by RST, but ultimately deducted from an RST Contractor's compensation in that the OOLA does not clearly specify: (i) whether an RST Contractor is responsible for, and thus whether an RST Contractor must pay or whether RST may deduct from an RST Contractor's payment or settlement, the cost of trailer maintenance (as

distinguished from accessory repair costs); and (ii) whether an RST Contractor is responsible for, and thus whether RST may deduct from an RST Contractor's payment or settlement, the cost for the maintenance of other equipment (such as a rental truck).

201.    As a result of the violation described in paragraph 200, Plaintiffs, individually, and the Owners as a class, have suffered injury in that: (i) they have been deprived of the ability to detect whether they have been underpaid as a result of their payment of or any deduction from their compensation for trailer maintenance costs (including the costs of any repairs due to wear and tear); (ii) they have been underpaid as a result of their payment of or any deduction from their compensation for trailer maintenance costs (including the costs of any repairs due to wear and tear); and (iii) they have been underpaid as a result of any deduction from their compensation that is due to the maintenance of other equipment provided to the RST Contractor by RST (such as a rental truck).

202.    In addition, Plaintiffs, individually, and the Owners as a class, have sustained damages as a result of the violations described in paragraphs 199 and 200 in the amount of any reduction in compensation resulting from their payment of or any deduction from their compensation for trailer maintenance costs (including the costs of any repairs due to wear and tear) and of any reduction in compensation resulting from their payment of or any deduction from their compensation due to the maintenance of other equipment provided to the RST Contractor by RST (such as a rental truck).

### v.    *Common Violations of Section 376.12(h) Causing Damage Specific to a Subclass of Class Members*

203.    On information and belief, RST also commits violations of section 376.12(h) that are common to all class members but that result in damages specific to a subclass of class members. The subclass with respect to each violation are as defined below.

a. **Unspecified Mark-Up**

204.    The subclass with respect to the violations of section 376.12(h) described below consists of those class members, including Hatton and Darkese, who received good or services from RST that were subject to a mark-up over cost as described below—except that, to the extent the violations of section 376.12(h) described below concern the payment of premiums, such violation is common to all class members and results in damages common to all class members.

205.    Appendix D of the OOLA provides for a mark-up but does not identify any items that are subject to the mark-up.  Appendix D provides that:

> **CARRIER** will charge the **CONTRACTOR**, TEN PERCENT (10% of total charge) per incident for each payment **CARRIER** makes on behalf of the **CONTRACTOR**.

*See* OOLA, Appx. D.

206.    None of the other provisions of the OOLA, including sections 5.2, 5.5, 5.6 or 5.9, reference Appendix D.

207.    As a business practice, RST deducts from RST Contractor settlements mark-ups on certain "sublet" maintenance and repair costs.  In certain cases, these mark-ups have been disclosed in the documentation that RST has provided to the RST Contractor to validate its settlement deductions.  By way of example only, the documentation provided to Hatton in connection with his March 19, 2025 settlement included a 15% mark-up for repairs and maintenance to RST's trailer and loaner truck, which repairs and maintenance were performed after Hatton had surrendered possession of both vehicles to RST.  Similarly, the work orders provided to Darkese in connection with his final settlement statement reflected a 10% mark-up on the repairs that RST purportedly performed on the Darkese 2022 Mack and RST trailer after Darkese had returned those vehicles to RST.

208.     Section 5.6 of the OOLA includes among the costs for which an RST Contractor

will be responsible the maintenance and repair costs for the equipment the RST Contractor leases

to RST.  Section 5.6 provides, in relevant part:

> 5.6. **Payment of Costs**. **CONTRACTOR** shall pay all costs of operation of the equipment. The costs for which **CONTRACTOR** is responsible include, but are not limited to, the following:
>
> …
>
> (b) All maintenance costs, and the costs of all repairs needed to operate the equipment in a safe and efficient manner; ….

*See* OOLA § 5.6.

209.     Section 5.9, as set forth above, permits RST to pay the "cost of operation" listed in

section 5.6 and then to seek reimbursement for such cost from the RST Contractor.

210.     Similarly, as set forth in paragraphs 191 through 194, by its express terms,

section 5.5 and thus section 5.9 does not permit RST to charge an RST Contractor any maintenance

costs for an RST trailer or other RST equipment (including the costs of any repairs due to wear

and tear).  Nonetheless, even if it did, section 5.9 only permits RST to pay the "cost of operation"

listed in section 5.5 and then to seek reimbursement for such cost from the RST Contractor.

211.     As such, RST, by its business practices, violates section 376.12(h) and the prefatory

paragraph of section 376.12 in that it does not adhere to or perform its obligations under section

5.9 when it deducts from an RST Contractor's payment or settlement a mark-up for any "cost of

operation" governed by section 5.9, including any cost of operation governed by section 5.2,

section 5.5, or section 5.6, as section 5.9 only permits RST to reimburse itself for any such item at

cost.

212.     Nonetheless, ambiguity may exist as to whether the 10% mark-up provided in

Appendix D of the OOLA applies to: (i) the payment by RST of any "cost of operation" governed

by section 5.9, including any "cost of operation" governed by section 5.2, section 5.5, or section 5.6; or (ii) any other premium or other cost for an item that may be deducted from an RST Contractor's payment or settlement under the terms of the OOLA.

213.    As such, in addition, or in the alternative, the OOLA, taken as a whole, including Appendix D of the OOLA, in particular, violates section 376.12(h) in that the OOLA does not clearly specify what items Appendix D governs.  Thus, the OOLA fails to clearly specify how the amount of each item that may be deducted from an RST Contractor's compensation is to be computed.

214.    To the extent that a mark-up in some amount properly applied to such costs under the terms of the OOLA, RST, nonetheless, by its business practices violates section 376.12(h) and the prefatory paragraph of section 376.12 in that it does not adhere to or perform Appendix D of the OOLA by deducting an amount in excess of the 10% mark-up provided for in Appendix D.

215.    As to other deductions, such as insurance, RST does not provide any documentation to validate the deduction.  As such, RST Contractors cannot tell whether any of these other deductions include a mark-up over cost.

216.    As to these other deductions, the failure of RST to provide its RST Contractors with the documents needed to determine the validity of the charge also constitutes a violation of section 376.12(h).

217.    As a result of the violations described in paragraphs 211, 213, 214, and 216, Hatton and Darkese, individually, and the subclass of Owners described in paragraph 204 (or, additionally, or in the alternative, Plaintiffs, individually, and the Owners as a class) have suffered injury in that: (i) they have been deprived of the ability to detect whether they have been underpaid compensation as a result of deductions from their payments or settlements that exceed the actual

cost of such items; and (ii) they have been underpaid compensation as a result of any such deductions.

218.    As a result of the violations described in paragraphs 211, 213, 214, and 216, Hatton and Darkese, individually, and the subclass of Owners described in paragraph 204 (or, additionally, or in the alternative, Plaintiffs, individually, and the Owners as a class), have also sustained damages in the amount of such underpayments.

        **b.    <u>Occupational Accident Insurance</u>**

219.    For those RST Contractors, such as Hatton, who entered into an OOLA that provided for a "cost" for occupational accident insurance of $180.00 per month, RST violated section 376.12(h) and the prefatory paragraph of section 376.12 as RST did not adhere to or perform section 7.4 when it increased the deduction for occupational accident insurance to $183.00.

220.    This subclass consists of those RST Contractors who entered into an OOLA that provided for a "cost" for occupational accident insurance of $180.00 per month.

221.    As a result of the violation described in paragraph 219, Hatton, individually, and the subclass of Owners described in paragraph 220, have sustained injury and damage in that they have been underpaid compensation as a result of deductions from their payments or settlements that exceed the "cost" set forth in section 7.4 of the OOLA.

       ***vi.    Violations of Section 376.12(h) Common to All Class Members But Causing Damage to Certain Members***

222.    On information and belief, RST also commits violations of section 376.12(h) that are common to all class members but that result in pecuniary loss to only certain members. In addition to monetary relief for those Plaintiffs that individually sustained damages as set forth below, this Complaint seeks injunctive and declaratory relief with respect to all such violations.

a.  **Leased Equipment Claim**

223.    A "Leased Equipment Claim" for purposes of this complaint refers to a claim made for property damage to equipment that the RST Contractor has leased to RST under insurance procured by RST.  The claim made under the GWCC Policy for the damage sustained to Hatton's Freightliner was a Leased Equipment Claim.

224.    On or after February 19, 2025, RST informed Hatton that GWCC had declared the Freightliner a total loss and that GWCC had calculated the actual cash value of Hatton's loss, including salvage, to be approximately $61,000.  Without salvage (meaning if Hatton chose to keep the damaged Freightliner), the actual cash value of Hatton's loss would be approximately $54,000.

225.    Under the terms of the GWCC Policy, Hatton could choose either to retain the damaged Freightliner or to release it to GWCC.  However, RST informed Hatton that a large deductible ($50,000) applied to the claim; so, in either event, Hatton would be required to agree to have the deductible subtracted from the actual cash value GWCC had calculated in order to receive payment of anything for his loss.

226.    After being told that a large deductible applied to Hatton's claim under the GWCC Policy, counsel for Hatton contacted GWCC to request a copy of the GWCC Policy, which GWCC provided.

227.    Among other things, the GWCC Policy provides physical damage coverage, including collision coverage for leased automobiles, such as Hatton's Freightliner.  The GWCC Policy also made Owners, that is, RST Contractors, additional insureds for purposes of such insurance.

228.    Contrary to RST's representations, the GWCC Policy did not include a deductible. Instead, the GWCC Policy included a Retention Endorsement that required RST to reimburse GWCC for any claim GWCC paid up to a retained amount of $50,000.

229.    After contacting GWCC, GWCC offered to pay Hatton $66,370.44 for his claim, which offer Hatton accepted.

230.    At that time, Hatton requested that the claim be made payable solely to himself and sent to the offices of his attorney.  GWCC stated that it would do so.

231.    Thereafter, on or about April 9, 2025, Hatton provided GWCC with a Certificate of Title to the Freightliner and a Release of Salvage, which documentation would have enabled GWCC to sell Hatton's Freightliner to a salvage buyer that had already agreed to purchase the Freightliner from GWCC.

232.    At that point, however, RST insisted that GWCC make any check for Hatton's claim payable to RST as well and that any check be delivered to RST.

233.    After GWCC indicated that it would comply with RST's instructions, Hatton objected to the same.

234.    In response, GWCC cancelled the sale of the Freightliner to the salvage buyer and, on or about April 29, 2025, sent a check to RST made payable to RST and Hatton in the amount of the actual cash value of the Freightliner ($58,970.44).

235.    As of the date of this Complaint, that check has neither been endorsed and given to Hatton nor any amount attributable thereto paid to Hatton.

236.    Later, notwithstanding Hatton's objections to GWCC's compliance with RST's instructions, GWCC completed the sale.  However, the intervening cancellation delayed the sale

until May 23, 2025, during which time Hatton continued to pay fees for the storage of the damaged Freightliner.

237.    Moreover, when the salvage buyer finally took possession of the vehicle, the salvage buyer reported to GWCC that certain equipment had been removed from the vehicle. Accordingly, GWCC reduced the amount that it paid for the salvage of the Freightliner from $7,400.00 to $6,315.00.

238.    As before, at RST's insistence, that check (for $6,315.00) was made payable to RST and Hatton, jointly, and sent to RST's address.

239.    As with the first check, as of the date of this Complaint, that check has neither been endorsed and given to Hatton nor any amount attributable thereto paid to Hatton.

**b.    Leased Equipment Claim: Section 5.6 and Section 5.9**

240.    The "cost" of comprehensive collision insurance for purposes of section 5.6 and section 5.9 of the OOLA cannot reasonably be construed to include a deductible or self-insured retention, much less a deductible that comprises a substantial percentage of the value of the leased equipment.

241.    As such, by withholding the compensation due Hatton for his Leased Equipment Claim, RST violated both section 376.12(h) and the prefatory paragraph of section 376.12 in that RST has failed to adhere to or perform section 5.6 and section 5.9, by deducting amounts from an RST Contractor's compensation for which the RST Contractor is not responsible.

242.    Nonetheless, given RST's conduct with respect to Hatton's claim, ambiguity may exist as to whether the "cost" of comprehensive collision insurance for purposes of section 5.6 and section 5.9 of the OOLA can include such costs.

243.    In the alternative, to the extent that the term "cost" for purposes of section 5.6 and section 5.9 of the OOLA can include such costs, sections 5.6 and section 5.9 of the OOLA violate

section 376.12(h) in that the terms of the OOLA, taken as a whole, including section 5.6 and section 5.9, in particular, fails to clearly specify how the cost of such comprehensive collision insurance is to be computed.

244.    Additionally, or in the alternative, RST violated section 376.12(h) by failing to provide to RST Contractors before undertaking the obligation to pay a deductible or self-insured retention in the event of such a claim, the documentation needed to validate such a charge.

245.    As a result of the violations described in paragraphs 241, 243, and 244, Plaintiffs, individually, and the Owners as a class, have suffered injury in that: (i) they have been underpaid compensation as a result of deductions from their payments or settlements for deductibles or self-insured retentions for which they are not responsible under the terms of the OOLA; or (ii) they have been deprived of the opportunities set forth in paragraph 42.

246.    In addition, as a result of the violations described in paragraphs 241, 243, and 244, Hatton, individually, has sustained damage in that: (i) he has been uncompensated or undercompensated for Leased Equipment Claim; (ii) he has incurred additional damages, such as storage fees, as a consequence of delays in payment caused by RST's misconduct; and (iii) he has suffered lost income as a result of his inability to promptly replace his Freightliner.

247.    On information and belief, as a result of the violations described in paragraphs 241, 243, and 244, other Owners have suffered damages similar to those suffered by Hatton as described in paragraph 246.  Further, a reasonable probability exists that RST Contractors will suffer similar injuries as a result of such violations in the future.

**c.    Leased Equipment Claim: Section 5.7**

248.    In the same way, by its express terms, the OOLA, taken as a whole, including section 5.7(a), in particular, does not authorize RST to assess an RST Contractor a charge for any deductible or self-insured retention RST pays in connection with Leased Equipment Claim.

249.    RST failed to comply with the OOLA, taken as a whole, including section 5.7(a), in particular, when RST withheld compensation due to Hatton for his Leased Equipment Claim.

250.    As such, RST violated section 376.12(h) and the prefatory paragraph of section 376.12 as RST did not adhere to or perform the OOLA, taken as a whole, including section 5.7(a), in particular, when RST withheld the amount due an RST Contractor for a Leased Equipment Claim.

251.    Additionally, or in the alternative, by its express terms, section 5.7(a) only permits RST to charge an RST Contractor $500 [or $25,000 in the case of the Most Recent Version] for any deductible or self-insured retention RST pays in connection with a Leased Equipment Claim.

252.    Accordingly, by its business practices, RST violates section 376.12(h) and the prefatory paragraph of section 376.12 as RST did not adhere to or perform section 5.7(a) by withholding the amount due an RST Contractor for a Leased Equipment Claim that exceeds the amount set forth in section 5.7 of the OOLA.

253.    Alternatively, ambiguity may exist, given RST's business practices, as to whether section 5.7(a) permits RST to withhold an amount due to an RST Contractor for a Leased Equipment Claim based on a deductible or self-insured retention.

254.    Accordingly, additionally, or in the alternative, section 5.7(a) of the OOLA violates section 376.12(h) in that it does not clearly specify whether a deductible or self-insured retention for a Leased Equipment Claim may initially be paid by RST but ultimately deducted from the RST Contractor's compensation for such Leased Equipment Claim.

255.    Additionally, or in the alternative, section 5.7(a) of the OOLA violates section 376.12(h) in that it does not recite how the amount to be deducted from an RST's compensation for a Leased Equipment Claim is to be computed.

256.     As a result of the violations described in paragraphs 250, 252, 254, and 255, Plaintiffs, individually, and the Owners as a class, have sustained injury, with respect to a Leased Equipment Claim, in that (i) they have been deprived of the ability to detect whether they have been underpaid compensation in connection with a Leased Equipment Claim; or (ii) they have been deprived of the opportunities set forth in paragraph 42.

257.     In addition, as a result of the violations described in paragraphs 250, 252, 254, and 255, Hatton, individually, has sustained damage in that: (i) he has been uncompensated or undercompensated for his claim under the GWCC Policy; (ii) he has incurred additional damages, such as storage fees, as a consequence of delays in payment caused by RST's misconduct; and (iii) he has suffered lost income as a result of his inability to promptly replace his Freightliner.

258.     On information and belief, as a result of the violations described in paragraphs 250, 252, 254, and 255, other Owners have suffered damages similar to those suffered by Hatton as described in paragraph 257.  Further, a reasonable probability exists that RST Contractors will suffer similar damages as a result of such violations in the future.

        **d.**   **Trailer Damage**

259.     By its express terms, section 5.5 of the OOLA only makes an RST Contractor liable for the first $500 [or $25,000 in the case of the Most Recent Version] loss of or damage to an RST trailer.

260.     However, as a business practice, as illustrated in paragraph 97, when RST suffers a loss or damage to its trailer, RST will deduct from the compensation of the RST Contractor to whom such trailer was provided (such as Hatton) an amount in excess of the amount set forth in section 5.5 of the OOLA.

261.     Accordingly, RST, by its business practices, violates section 376.12(h) and the prefatory paragraph of section 376.12 in that it does not adhere to or perform section 5.5 of the

OOLA when it deducts more than such amount from an RST Contractor's compensation for the loss of or damage to a trailer.

262.    In the alternative, based on RST's business practices, ambiguity may exist as to: (i) whether the OOLA permits RST to deduct more than the amount set forth in section 5.5 of the OOLA from an RST Contractor's compensation for loss or damage to its trailer; or (ii) whether the amount RST can deduct from an RST Contractor's settlement for loss or damage to a trailer or other equipment depends upon whether RST is compensated for such loss or damage by insurance or otherwise.

263.    Accordingly, in the alternative, the OOLA, taken as a whole, including section 5.5 and section 5.9, in particular, violates section 376.12(h) in that the OOLA does not clearly specify what costs associated with trailers may be initially paid by RST, but ultimately deducted from an RST Contractor's compensation in that the OOLA does not clearly specify: (i) whether an RST Contractor is responsible for, and thus whether RST can deduct from an RST Contractor's payment or settlement, the amount of any loss of or damage to a trailer that exceeds the amount set forth in section 5.5 of the OOLA; and (ii) whether the amount for the loss of or damage to a trailer or other equipment that an RST Contractor is responsible for, and thus whether RST can deduct from an RST Contractor's payment or settlement, depends upon whether RST is compensated for such loss or damage by insurance or otherwise.

264.    Additionally, or in the alternative, the OOLA, taken as a whole, including section 5.2 and section 5.5, in particular, also violates section 376.12(h) in that the OOLA does not clearly specify how the amount of any deductible cost is to be computed.  Among other things, the OOLA does not clearly specify: (i) the standard by which the amount for any claim for loss or damage to an RST trailer or other equipment is to be computed (e.g., actual cash value, replacement cost);

(ii) the deductible, self-insured retention, or limits that apply to any claim for loss or damage to an RST trailer or other equipment (iii) whether or not the cost for which RST may be reimbursed for loss or damage to a trailer is limited to or exceeds the amount set forth in section 5.5 of the OOLA; (iv) whether or not the amount for which RST may be reimbursed for loss or damage to a trailer or other equipment depends upon whether RST is compensated for such for loss or damage by insurance or otherwise.

265.     In addition, or in the alternative, RST, by its business practices, violates section 376.12(h) in that it does not provide RST Contractors with the information needed to validate the deductions being made to RST Contractor payments or settlements for trailer loss or damage.  In particular, as a business practice, RST does not disclose to RST Contractors the limits or any deductible or self-insured retention amounts for the coverage it has for the trailers or other equipment it provides to RST Contractors.

266.     As a result of the violations described in paragraphs 261, 263, 264, and 265, Plaintiffs, individually, and the Owners as a class, have suffered injury in that: (i) they have been deprived of the ability to detect whether they have been underpaid as a result of any deduction from their payments or settlements for the amount of any claim for loss or damage to a trailer that is covered by insurance; or (ii) they have been underpaid as a result of any deduction from their compensation that exceeds the amount set forth in section 5.5 of the OOLA due to a claim for loss or damage to a trailer.

267.     As a result of the violations in paragraphs 261, 263, 264, and 265, Hatton has suffered damage in that he has been underpaid compensation as a result of deductions from his settlements for loss or damage to RST's trailer which exceed $500.

268.    On information and belief, as a result of the violations described in paragraphs 261, 263, 264, and 265, other Owners have suffered damages similar to those suffered by Hatton as described in paragraph 267.  Further, a reasonable probability exists that RST Contractors will suffer similar damages as a result of such violations in the future.

### vii.    Section 376.12(i)

269.    The TILR also prohibit a carrier from requiring an Owner to purchase or rent any products, equipment, or services from the carrier.  Section 376.12(i) provides, in full:

(i) Products, equipment, or services from authorized carrier. The lease shall specify that the lessor is not required to purchase or rent any products, equipment, or services from the authorized carrier as a condition of entering into the lease arrangement. The lease shall specify the terms of any agreement in which the lessor is a party to an equipment purchase or rental contract which gives the authorized carrier the right to make deductions from the lessor's compensation for purchase or rental payments.

See 49 C.F.R. § 376.12(i).

270.    The first sentence of section 5.8 of the OOLA specifically addresses purchases which are a condition of the OOLA.

5.8. Purchase or rental Agreements. **CONTRACTOR** is not required to purchase or rent any products, equipment, or services from **CARRIER** as a condition of this Agreement. If **CONTRACTOR** and **CARRIER** are parties to any equipment purchase or rental agreement that authorizes **CARRIER** to make deductions from **CONTRACTOR'S** compensation for purchase or rental payments, the terms of the agreement are in Appendix C- 1, which is attached to this Agreement.

See OOLA § 5.8.

### viii.    Violations of Section 376.12(i) Causing Damages Common to All Class Members

271.    On information and belief, RST commits violations of section 376.12(i) that are common to all class members and that result in damages common to all class members.

272.    For the reasons set forth above concerning section 376.12(h) with respect to the physical damage insurance and cargo insurance covering the leased equipment, section 5.7(a) of

the OOLA violates section 376.12(i) to the extent that it requires RST Contractors, including Plaintiffs, to purchase such insurance through RST.

273.    Additionally, or in the alternative, for the reasons set forth above concerning section 376.12(h) with respect to the physical damage insurance and cargo insurance covering the leased equipment, RST, by its business practices, has violated section 376.12(i) by requiring RST Contractors to purchase physical damage insurance and cargo insurance covering the leased equipment from RST.

274.    Additionally, or in the alternative, for the reasons set forth above concerning section 376.12(h) with respect to the physical damage insurance and cargo insurance covering the leased equipment, RST also violated section 376.12(i) and the prefatory paragraph of section 376.12 as RST did not adhere to or perform its obligation in section 5.8 not to require an RST Contractor to purchase any product or service, such as insurance, from RST as a condition of the OOLA.

275.    As a result of the violations described in paragraphs 272, 273, and 274, Plaintiffs, individually, and the Owners as a class, have sustained injury in that: (i) they have been forced to purchase insurance from RST that they could have purchased elsewhere for less; (ii) they have been forced to purchase insurance from RST that they did not need; and (iii) they have been underpaid the compensation otherwise due them under the terms of the OOLA in that amounts have been deducted from their payments or settlements for physical damage insurance and cargo insurance for RST that they did not need and from which they do not benefit.

276.    Accordingly, Plaintiffs, individually, and the Owners as a class, have also sustained damages as a result of the violations described in paragraphs 272, 273, and 274 in the amount of any underpayments resulting from the deduction from their payments or settlements for such physical damage insurance and cargo insurance.

### ix.    *Section 376.12(j)(1)*

277.    Section 376.12(j) also include several provisions that specifically address a carrier's obligations with respect to insurance, including certain terms a lease must contain regarding insurance.  Section 376.12(j)(1), in particular, addresses responsibility for insurance and related lease terms.  Paragraph 1 of section 376.12(j) provides, in full:

> **(j)** *Insurance.*
>
> **(1)** The lease shall clearly specify the legal obligation of the authorized carrier to maintain insurance coverage for the protection of the public pursuant to FMCSA regulations under 49 U.S.C. 13906. The lease shall further specify who is responsible for providing any other insurance coverage for the operation of the leased equipment, such as bobtail insurance. If the authorized carrier will make a charge back to the lessor for any of this insurance, the lease shall specify the amount which will be charged-back to the lessor.

*See* 49 C.F.R. § 376.12(j)(1).

278.    Several different provisions of the OOLA concern responsibility for insurance including section 5.6(h) (paragraph 130), section 5.6(i) (paragraph 142), section 5.7(a) (paragraph 157), section 5.7(b) (paragraph 178) and the second to the last paragraph of section 7.4 of the OOLA (paragraph 179).

### x.    *Violations of Section 376.12(j)(1) Causing Damages Common to All Class Members*

279.    On information and belief, RST commits violations of section 376.12(j)(1) that are common to all class members and that result in damages common to all class members.

#### a.    Occupational Accident Insurance

280.    For the same reasons set forth above concerning section 376.12(h) with respect to occupational accident insurance, RST, by its business practices, violated section 376.12(j)(1) and the prefatory paragraph of section 376.12.  RST did not adhere to or perform section 5.7(b) which only entitles RST to deduct occupational accident "premiums" from RST Contractor settlements

and the amounts RST deducted from such RST Contractor settlements actually exceeded such premiums.

281.    For the same reasons set forth above concerning section 376.12(h) with respect to occupational accident insurance, to the extent that ambiguity exists in the amount that may be deducted for occupational accident insurance from an RST Contractor's compensation under section 5.7(b), the OOLA also violates section 376.12(j)(1) in that the OOLA fails to clearly specify the amount which will be charged-back to the RST Contractor for such occupational accident insurance.

282.    As a result of the violations described in paragraphs 280 and 281, Plaintiffs, individually, and the Owners as a class, have suffered injury in that: (i) they have been deprived of the ability to detect whether they have been underpaid compensation as a result of deductions from their payments or settlements for occupational accident insurance that exceed the actual premiums for such insurance; and (ii) they have been underpaid compensation as a result of any such deduction.

283.    As a result of the violations described in paragraphs 280 and 281, Plaintiffs, individually, and the Owners as a class, have also sustained damages as a result of such violations in the amount of such underpayments.

b.  **Comprehensive Collision Insurance**

284.    For the same reasons set forth above concerning section 376.12(h) with respect to comprehensive collision insurance, by its business practices, RST also violates both section 376.12(j)(1) and the prefatory paragraph of section 376.12 in that RST fails to adhere to or perform section 5.6 and section 5.9, by deducting from RST Contractor settlements an amount that exceeds the amount required to reimburse RST for the "cost" of such insurance.

285.     For the same reasons set forth above concerning section 376.12(h) with respect to comprehensive collision insurance, taken as a whole, the OOLA violates section 376.12(j)(1) with respect to comprehensive collision insurance in that the OOLA fails to specify the amount which will be deducted from RST Contractor payments or settlements for comprehensive collision insurance.

286.     As a result of the violations described in paragraphs 284 and 285, Plaintiffs, individually, and the Owners as a class, have suffered injury in that: (i) they have been deprived of the ability to detect whether they have been underpaid compensation as a result of deductions from their payments or settlements for insurance that exceed the actual premiums for comprehensive collision insurance; and (ii) they have been underpaid compensation as a result of any such deductions.

287.     Accordingly, Plaintiffs, individually, and the Owners as a class, have also sustained damages as a result of the violations described in paragraphs 284 and 285 in the amount of such underpayments.

      c.   **Physical Damage and Cargo Insurance Covering the Equipment**

288.     For the same reasons set forth above concerning section 376.12(h) with respect to the property damage and cargo insurance covering the equipment that RST agreed to furnish, by its business practices, RST has also violated section 376.12(j)(1) and the prefatory paragraph of section 376.12 as RST did not adhere to or perform its obligation under section 5.7(a) to furnish physical damage insurance and cargo insurance covering the leased equipment in that RST instead made RST Contractor's responsible for furnishing such insurance.

289.     For the same reasons set forth above concerning section 376.12(h) with respect to the property damage and cargo insurance covering the equipment that RST agreed to furnish, section 5.7(a) of the OOLA violates section 376.12(j)(1) in that it does not specify what amount,

if any, will be charged-back to RST Contractors for property damage and cargo insurance covering the leased equipment.

290.    Additionally, or in the alternative, for the same reasons set forth above concerning section 376.12(h) with respect to the property damage and cargo insurance covering the equipment that RST agreed to furnish, by its business practices, RST also violates both section 376.12(j)(1) and the prefatory paragraph of section 376.12 in that RST fails to adhere to or perform section 5.7(b) by deducting from RST Contractor settlements an amount that exceeds the amount required to reimburse RST for the "cost" of such insurance.

291.    Accordingly, as a result of the violations described in paragraphs 288, 289, and 290, Plaintiffs, individually, and the Owners as a class, have suffered injury in that: (i) they have been underpaid compensation as a result of deductions from their compensation for the public liability, property damage and cargo insurance that RST agreed to furnish; (ii) they have been underpaid compensation as a result of deductions from their compensation for public liability, property damage, and cargo insurance that exceed the actual premiums for such insurance; and (iii) they have been deprived of the ability to detect whether they have been underpaid compensation as a result of any such deduction.

292.    Accordingly, Plaintiffs, individually, and the Owners as a class, have also sustained damages as a result of the violations described in paragraphs 288, 289, and 290 in the amount of such underpayments.

### d.  <u>Insurance Mandated for Carriers</u>

293.    As noted above, section 376.12(j)(1) provides that "[t]he lease shall clearly specify the legal obligation of the authorized carrier to maintain insurance coverage for the protection of the public pursuant to FMCSA regulations under 49 U.S.C. 13906."  This provision requires a

carrier to not only disclose in the lease that the carrier has an obligation to maintain the public liability insurance FMCSA regulations mandate but also to undertake such obligation.

294.    Section 5.7(a) of the OOLA, which is set forth in full above, touches upon that requirement.  Section 5.7(a) provides, in relevant part:

> **5.7.  Insurance.**
>
> (a) Federal Highway Safety Administration regulations require **CARRIER** to maintain insurance coverage for the protection of the public. **CARRIER** shall furnish public liability; property damage and cargo insurance covering the equipment **CONTRACTOR** operates in the service of **CARRIER**. …

*See* OOLA § 5.7(a).

295.    Section 5.7(a) of the OOLA violates section 376.12(j)(1) in that it does not clearly specify that RST has an obligation to maintain public liability insurance pursuant to FMCSA regulations under 49 U.S.C. 13906.  Instead, the lease has been structured to falsely imply that (in addition to the public liability insurance the FMCSA regulations require) RST has an obligation under FMCSA regulations to maintain property damage and cargo insurance covering the leased equipment that the FMCSA regulations do not, in fact, require RST  to maintain.

296.    As a result of the violation described in paragraph 295, Plaintiffs, individually, and the Owners as a class, have sustained injury in that: (i) they have been deprived of the ability to detect that they have been forced to purchase insurance from RST that they could have purchased elsewhere for less; (ii) they have been deprived of the ability to detect that they have been forced to purchase insurance from RST that they did not need; and (iii) they have been underpaid the compensation otherwise due them under the terms of the OOLA in that amounts have been deducted from their payments or settlements for physical damage insurance and cargo insurance for RST that they did not need and from which they do not benefit.

297.    Accordingly, Plaintiffs, individually, and the Owners as a class, have also sustained damages as a result of the violation described in paragraph 295 in the amount of any underpayments resulting from the deduction from their compensation an amount for such physical damage insurance and cargo insurance.

### xi.    *Violations of Section 376.12(j)(1) Common to All Class Members But Causing Damage to Certain Members*

298.    On information and belief, RST also commits violations of section 376.12(j)(1) that are common to all class members but that result in pecuniary loss to only certain members.  In addition to monetary relief for those Plaintiffs that individually sustained damages as set forth below, this Complaint seeks injunctive and declaratory relief with respect to all such violations.

### a.    Occupational Accident Insurance

299.    For the same reasons set forth above concerning section 376.12(h) with respect to occupational accident insurance, RST also violated section 376.12(j)(1) and the prefatory paragraph of section 376.12.  When RST increased the deduction for occupational accident insurance to $183.00, RST did not adhere to or perform section 7.4 for those RST Contractors who entered into an OOLA that provided for a "cost" for such insurance of $180.00 per month.

300.    As a result of the violation described in paragraph 299, Hatton, individually, and the subclass of Owners described in paragraph 220, have sustained injury and damage in that they have been underpaid compensation as a result of deductions from their payments or settlements that exceed the "cost" set forth in section 7.4 of the OOLA.

### b.    Leased Equipment Claim

301.    As set forth above, by its express terms, the OOLA, taken as a whole, including section 5.7(a), in particular, does not authorize RST to assess an RST Contractor a charge for any deductible or self-insured retention RST pays in connection with a Leased Equipment Claim.

302.    Accordingly, RST, by its business practices, has violated section 376.12(j)(1) and the prefatory paragraph of section 376.12 as RST did not adhere to or perform the OOLA, taken as a whole, including section 5.7(a), in particular, when RST withholds an amount due an RST Contractor for a Leased Equipment Claim.

303.    Additionally, or in the alternative, as set forth above, by its express terms, section 5.7(a) only permits RST to charge an RST Contractor the amount set forth in section 5.7 of the OOLA for any deductible or self-insured retention RST pays in connection with a Leased Equipment Claim.

304.    Accordingly, by its business practices, RST has violated section 376.12(j)(1) and the prefatory paragraph of section 376.12 as RST did not adhere to or perform section 5.7(a) by withholding the amount due an RST Contractor for a Leased Equipment Claim that exceeds the amount set forth in section 5.7 of the OOLA.

305.    Alternatively, as set forth above, ambiguity may exist, given RST's business practices, as to whether section 5.7(a) permits RST to withhold any amount due to an RST Contractor for a Leased Equipment Claim.

306.    Accordingly, additionally, or in the alternative, section 5.7(a) of the OOLA violates section 376.12(j)(1) in that it does not specify the amount that will be charged-back to an RST Contractor from any amount due to the RST Contractor for a Leased Equipment Claim.

307.    As a result of the violations described in paragraphs 302, 304, and 306, Plaintiffs, individually, and the Owners as a class, have sustained injury, with respect to a Leased Equipment Claim, in that (i) they have been deprived of the ability to detect whether they have been underpaid compensation in connection with a Leased Equipment Claim; and (ii) they have been deprived of the opportunities set forth in paragraph 42.

308.    As such, as a result of the violations described in paragraphs 302, 304, and 306, Hatton, individually, has sustained damage in that: (i) he has been uncompensated or undercompensated for his claim under the GWCC Policy; (ii) he has incurred additional damages, such as storage fees, as a consequence of delays in payment caused by RST's misconduct; and (iii) he has suffered lost income as a result of his inability to promptly replace his Freightliner.

309.    On information and belief, as a result of the violations described in paragraphs 302, 304, and 306, other Owners have suffered damages similar to those suffered by Hatton as described in paragraph 308.  Further, a reasonable probability exists that RST Contractors will suffer similar damages as a result of such violations in the future.

### xii.    <u>Section 376.12(j)(2)</u>

310.    The TILR also specify certain documentation that the carrier must provide to an Owner concerning any insurance purchased for the operation of the leased equipment from or through the authorized carrier.  Paragraph 2 of section 376.12(j) provides, in full:

> **(j) Insurance.**
>
> **(2)** If the lessor purchases any insurance coverage for the operation of the leased equipment from or through the authorized carrier, the lease shall specify that the authorized carrier will provide the lessor with a copy of each policy upon the request of the lessor. Also, where the lessor purchases such insurance in this manner, the lease shall specify that the authorized carrier will provide the lessor with a certificate of insurance for each such policy. Each certificate of insurance shall include the name of the insurer, the policy number, the effective dates of the policy, the amounts and types of coverage, the cost to the lessor for each type of coverage, and the deductible amount for each type of coverage for which the lessor may be liable.

*See* 49 C.F.R. § 376.12(j)(2).

### xiii.    <u>Violations of Section 376.12(j)(2) Causing Damages Common to All Class Members</u>

311.    On information and belief, RST commits violations of section 376.12(j)(2) that are common to all class members and that result in damages common to all class members.

312.     As set forth above, pursuant to the terms of the OOLA or as a result of RST's business practices, RST Contractors purchased occupational accident insurance and physical damage and cargo insurance for the equipment, including comprehensive collision insurance, from or through RST.

313.     The OOLA violates section 376.12(j)(2) in that it does not specify that the carrier would provide the RST Contractor with a copy of each policy upon the request of the RST Contractor.

314.     The OOLA also violates section 376.12(j)(2) in that it does not specify that RST will provide the RST Contractor with a certificate of insurance for each such policy.

315.     As a business practice, RST does not provide certificates of insurance for occupational accident insurance, physical damage and cargo insurance for the leased equipment, or comprehensive collision insurance, or the name of the insurer, the policy number, the effective dates of the policy, the amounts and types of coverage, the cost to the RST Contractor for each type of coverage, or the deductible amount for each type of coverage.

316.     Accordingly, by its business practices, RST also violates section 376.12(j)(2) by failing to provide such certificate of insurance and the information required thereby.

317.     As a result of the violations described in paragraphs 313, 314, and 316, Plaintiffs, individually, and the Owners as a class, have sustained injury, with respect to all such insurance, in that they have been deprived of the ability to determine whether to purchase such insurance from a source other than RST.

318.     In addition, as a result of the violations described in paragraphs 313, 314, and 316, Plaintiffs, individually, and the Owners as a class, have sustained injury, with respect to physical damage and cargo insurance and comprehensive collision insurance, in that: (i) they have been

deprived of the ability to detect whether they have been underpaid compensation as a result of deductions from their compensation for such insurance that exceed the actual cost of such insurance; (ii) they have been deprived of the ability to detect that they have been forced to purchase insurance from RST that they could have purchased elsewhere for less; (iii) they have been deprived of the ability to detect that they have been forced to purchase insurance from RST that they did not need;  (iv) they have been underpaid the compensation otherwise due them under the terms of the OOLA in that amounts have been deducted from their payments or settlements for physical damage insurance and cargo insurance for RST that they did not need and from which they do not benefit; and (v) they have been underpaid compensation as a result of deductions from their payments or settlements that exceed the actual cost of such insurance.

319.    In addition, Plaintiffs, individually, and the Owners as a class, have also sustained damages as a result of the violations described in paragraphs 313, 314, and 316 in the amount of such underpayments.

### xiv. <u>Violations of Section 376.12(j)(2) Common to All Class Members But Causing Damage to Certain Members</u>

320.    On information and belief, RST also commits violations of section 376.12(j)(2) that are common to all class members but that result in pecuniary loss to only certain members.  In addition to monetary relief for those Plaintiffs that individually sustained damages as set forth below, this Complaint seeks injunctive and declaratory relief with respect to all such violations.

321.    As a result of the violations described in paragraphs 313, 314, and 316, Hatton, individually, has sustained damage in that: (i) he has been uncompensated or undercompensated for his Leased Equipment Claim; (ii) he has incurred additional damages, such as storage fees, as a consequence of delays in payment caused by RST's misconduct; and (iii) he has suffered lost income as a result of his inability to promptly replace his Freightliner.

322.    On information and belief, as a result of the violations described in paragraphs 313, 314, and 316, other Owners have suffered damages similar to those suffered by Hatton as described in paragraph 320.  Further, a reasonable probability exists that RST Contractors will suffer similar damages as a result of such violations in the future.

###### xv.    *Section 376.12(j)(3)*

323.    The TILR also contain provisions that govern deductions from an Owner's settlements for cargo or property damage.  Paragraph 3 of section 376.12(j) provides, in full:

> **(j)** *Insurance.*
>
> **(3)** The lease shall clearly specify the conditions under which deductions for cargo or property damage may be made from the lessor's settlements. The lease shall further specify that the authorized carrier must provide the lessor with a written explanation and itemization of any deductions for cargo or property damage made from any compensation of money owed to the lessor. The written explanation and itemization must be delivered to the lessor before any deductions are made.

*See* 49 C.F.R. § 376.12(j)(3).

324.    Several provisions of the OOLA (set forth above) concern cargo or property damage, including: section 5.2 (paragraphs 347 and 191 ), section 5.5 (paragraph 192) and section 5.7(a) (paragraph 157).  Section 5.9 (paragraph 139), as explained above, permits RST to reimburse, itself, for any "cost of operation" listed in section 5.2 or section 5.5.

###### xvi.    *Violations of Section 376.12(j)(3) Common to All Class Members But Causing Damage to Certain Members*

325.    On information and belief, RST commits violations of section 376.12(j)(3) that are common to all class members but that result in pecuniary loss to only certain members.  In addition to monetary relief for those Plaintiffs that individually sustained damages as set forth below, this Complaint seeks injunctive and declaratory relief with respect to all such violations.

a. **Trailer Damage**

326.    As noted in paragraph 259, by its express terms, section 5.5 of the OOLA only makes an RST Contractor liable for the first $500.00 [or $25,000 in the case of the Most Recent Version] loss of or damage to an RST trailer.

327.    As illustrated in paragraph 97, RST deducted an amount from Hatton's settlement that exceeded $500.00 for loss or damage to its trailer.

328.    Accordingly, RST, by its business practices, violated section 376.12(j)(3) and the prefatory paragraph of section 376.12 in that it did not adhere to or perform section 5.5 of the OOLA when it deducted more than $500.00 from Hatton's settlement for damage to its trailer.

329.    In addition, or in the alternative, for the reasons set forth above concerning section 376.12(h) with respect to trailer damage, the terms of the OOLA, taken as a whole, including section 5.2 and section 5.5, in particular, violates section 376.12(j)(3) in that the OOLA does not clearly specify the conditions under which deductions for cargo or property damage may be made from an RST Contractor's payment or settlement, including: (i) whether an RST Contractor is responsible for and thus whether RST can deduct from an RST Contractor's payment or settlement the amount of any physical loss of or damage to a trailer that exceeds the amount set forth in section 5.5 of the OOLA; and (ii) whether the amount that an RST Contractor is responsible for and thus whether the amount RST can deduct from an RST Contractor's payment or settlement depends upon whether RST is compensated for such loss or damage by insurance or otherwise.

330.    In addition, RST, by its business practices, violates section 376.12(j)(3) in that it does not provide RST Contractors with a written explanation and itemization of any deductions for cargo or property damage made from any compensation of money owed to an RST Contractor.

331.    By way of example only, as set forth in paragraph 97, RST deducted the cost (plus a 15% mark-up) for trailer repairs to RST's trailer.  The amounts deducted included the cost to

repair certain damage to the trailer that resulted from Hatton's December 28, 2024 accident. Yet, RST did not provide Hatton with any explanation for why such deduction was being made or was permitted under the terms of the OOLA.

332. As a result of the violations described in paragraphs 328, 329, and 330, Plaintiffs, individually, and the Owners as a class, have suffered injury in that: (i) they have been deprived of the ability to detect whether they have been underpaid as a result of any deduction from their payments or settlements due to trailer damage; or (ii) they have been deprived of the ability to detect whether they have been underpaid as a result of any deduction from their payments or settlements due to a claim for loss or damage to a trailer that exceeds the amount set forth in section 5.5 of the OOLA; or (iii) they have been deprived of the ability to detect whether they have been underpaid as a result of any deduction from their payments or settlements due to the amount of any claim for loss or damage to a trailer that is covered by insurance.

333. As a result of the violation described in paragraphs 328, 329, and 330, Hatton has suffered damage in that he has been underpaid compensation as a result of deductions from his settlement payments for loss or damage to RST's trailer which exceed $500.00.

334. On information and belief, as a result of the violations described in paragraphs 328, 329, and 330, other Owners have suffered damages similar to those suffered by Hatton as described in paragraph 333. Further, a reasonable probability exists that RST Contractors will suffer similar damages as a result of such violations in the future.

### b.  **Leased Equipment Claim**

335. In addition, as set forth above, by its express terms, the OOLA, taken as a whole, including section 5.6, section 5.7(a), and section 5.9, in particular, does not authorize RST to make deductions from an RST Contractor's compensation for any deductible or self-insured retention RST pays in connection with a Leased Equipment Claim.

336.     Accordingly, RST, by its business practices, has violated section 376.12(j)(3) and the prefatory paragraph of section 376.12 as RST did not adhere to or perform the OOLA, taken as a whole, including section 5.6, section 5.7(a), and section 5.9, in particular, when RST withholds an amount due an RST Contractor for a Leased Equipment Claim.

337.     Additionally,  or in the alternative, as set forth above, by its express terms, section 5.7(a) only permits RST to deduct the amount set forth in section 5.7 of the OOLA from an RST Contractor's compensation for any deductible or self-insured retention RST pays in connection with a Leased Equipment Claim.

338.     Accordingly, by its business practices, RST has violated section 376.12(j)(3) and the prefatory paragraph of section 376.12 as RST did not adhere to or perform section 5.7(a) by withholding the amount due an RST Contractor for a Leased Equipment Claim that exceeds the amount set forth in section 5.7 of the OOLA.

339.     Alternatively, as set forth above, ambiguity may exist, given RST's business practices, as to whether section 5.7(a) or section 5.6 and section 5.9 permit RST to make deductions from an RST Contractor's compensation for any deductible or self-insured retention RST pays in connection with a Leased Equipment Claim.

340.     Accordingly, additionally, or in the alternative, section 5.7(a), section 5.6 and section 5.9 of the OOLA violate section 376.12(j)(3) in that they do not specify the conditions under which deductions for property damage may be made from an RST Contractor's compensation for any deductible or self-insured retention RST pays in connection with a Leased Equipment Claim.

341.    As of the date of this Complaint, RST has yet to provide Hatton with any written explanation or itemization for its failure to pay him the full amount of his claim under the GWCC Policy.

342.    Accordingly, RST, by its business practices, violates section 376.12(j)(3) when it fails to provide an RST Contractor with a written explanation and itemization of any deductions for property damage made from any compensation of money owed to the RST Contractor for a Leased Equipment Claim.

343.    As a result of the violations described in paragraphs 336, 338, 340, and 342, Plaintiffs, individually, and the Owners as a class, have sustained injury, with respect to a Leased Equipment Claim, in that (i) they have been deprived of the ability to detect whether they have been underpaid compensation in connection with a Leased Equipment Claim; or (ii) they have been deprived of the opportunities set forth in paragraph 42.

344.    In addition, as a result of the violations described in 336, 338, 340, and 342, Hatton, individually, has sustained damage in that: (i) he has been uncompensated or undercompensated for his claim under the GWCC Policy; (ii) he has incurred additional damages, such as storage fees, as a consequence of delays in payment caused by RST's misconduct; and (iii) he has suffered lost income as a result of his inability to promptly replace his Freightliner.

345.    On information and belief, as a result of the violations described in 336, 338, 340, and 342, other Owners have suffered damages similar to those suffered by Hatton as described in paragraph 344.  Further, a reasonable probability exists that RST Contractors will suffer similar damages as a result of such violations in the future.

D.  **UNPAID COMPENSATION**

    *i.  <u>Section 376.12(e)</u>*

    346.    The TILR also require a lease to clearly specify who will be responsible for loading

and unloading and the compensation, if any, to be paid for such services.  The fourth sentence of

section 376.12(e) provides that:

> The lease shall clearly specify who is responsible for loading and unloading the property onto and from the motor vehicle, and the compensation, if any, to be paid for this service.

*See* 49 C.F.R. § 376.12(e).

    347.    Section 5.2 and section 5.6(k) contain the only provisions of the OOLA that

mention loading or unloading.  The first paragraph of section 5.2 provides, in full:

> 5.2. **Cargo Claims**. **CONTRACTOR** shall deliver cargo that is dispatched and loaded on the vehicles to the consignee(s) with reasonable diligence, speed and care. **CONTRACTOR** shall be responsible for the first $ 500.00 of any cargo claim, as well as any expense incurred by **CARRIER** in the settlement and investigation of a claim.  **CONTRACTOR** shall also be liable for any cargo claims recovery in excess of **CARRIER'S** cargo insurance policy limits.

*See* OOLA § 5.2.  The version of OOLA that Darkese signed—which, on information and belief,

is the most recent version of the OOLA ("Most Recent Version")—has changed the dollar figure

in section 5.2 from $500.00 to $25000.00.

    348.    Section 5.6 provides, in relevant part:

> 5.6. **Payment of Costs**. **CONTRACTOR** shall pay all costs of operation of the equipment. The costs for which **CONTRACTOR** is responsible include, but are not limited to, the following:
>
> …
>
> (k) All expenses incurred in connection with loading and unloading property onto and from the equipment, unless otherwise specified in **CARRIER'S** tariff, …

*See* OOLA § 5.6.

### ii. *Violations of Section 376.12(e) Causing Damages Common to All Class Members*

349.    On information and belief, RST commits violations of section 376.12(e) that are common to all class members and that result in damages common to all class members.

350.    As a part of the services Plaintiffs and other RST Contractors render pursuant to the OOLA, they are required every day they perform services on behalf of RST to load and unload cargo.

351.    Although both sections mention loading or unloading, neither clearly specifies who is responsible for loading or unloading.  As such, the OOLA violates section 376.12(e) in that the OOLA does not clearly specify who is responsible for loading and unloading cargo onto the leased equipment.

352.    Likewise, the OOLA violates section 376.12(e) in that it does not specify the compensation, if any, the RST Contractor is to be paid for loading or unloading.

353.    As part of its business practices, RST does not, in fact, compensate RST Contractors for loading and unloading.

354.    As such, as a result of the violations described in paragraphs 351 and 352, Plaintiffs, individually, and the Owners as a class, have suffered injury in that: (i) they have been deprived of the ability to detect whether they are entitled to compensation for loading or unloading; and (ii) they have not received compensation for the loading and unloading services they perform.

355.    As such, Plaintiffs, individually, and the Owners as a class, have sustained damages as a result of the violations described in paragraphs 351 and 352 in an amount equal to the reasonable value of the loading and unloading services they render.

## E.   VIOLATIONS UNRELATED TO COMPENSATION

### i.   *Section 376.12(c)(1)*

356.    The TILR mandate that the lease include certain provisions regarding the possession, control, and use of the equipment.  Section 376.12(c)(1) provides, in full, that:

> (1) The lease shall provide that the authorized carrier lessee shall have exclusive possession, control, and use of the equipment for the duration of the lease. The lease shall further provide that the authorized carrier lessee shall assume complete responsibility for the operation of the equipment for the duration of the lease.

*See* 49 C.F.R. § 376.12(c)(1)

### ii.   *Violations of Section 376.12(c)(1) Common to All Class Members*

357.    On information and belief, RST commits violations of section 376.12(c)(1) that are common to all class members but for which Plaintiffs do not seek damages at this time.  Instead, this Complaint seeks injunctive and declaratory relief with respect to all such violations.

358.    The relevant provisions of the OOLA include sections 3.2 and 3.3.  Section 3.2 provides, in full:

> 3.2 **Contractor's Legal Title**. **CONTRACTOR** represents that it holds full legal title to the equipment or that it has the legal right to exercise full control over the equipment **CONTRACTOR** shall furnish **CARRIER** with all the information and documents of title or registration that will enable **CARRIER** to identify the equipment.

*See* OOLA § 3.2

359.    Section 3.2 contains the only provision related to who controls the equipment. Contrary to section 376.12(c)(1), this provision indicates that control over the equipment resides with the RST Contractor, not RST.

360.    Section 3.3 provides, in full:

> 3.3. **Possession and Use of Equipment**. For the term of this Agreement, possession and use of the equipment is entirely vested in **CARRIER**.  **CARRIER'S** possession and use is good against all the world, including **CONTRACTOR**.

*See* OOLA § 3.3.  Again, contrary to section 376.12(c)(1), this provision only vests exclusive possession and use of the equipment with RST.  It does not vest RST exclusive control of the equipment.

361.    Accordingly, the OOLA, taken as a whole, including section 3.2 and section 3.3, in particular, violates section 376.12(c)(1) in that the OOLA does not provide that RST shall have exclusive control of the equipment.

362.    The OOLA, taken as a whole, including section 3.2 and section 3.3, in particular, violates section 376.12(c)(1) in that the OOLA does not provide that RST shall assume complete responsibility for the operation of the equipment.

363.    Section 376.12(c)(1) exists to ensure that carriers take control of and assume complete responsibility for leased equipment during the term of the lease.  By omitting the required verbiage from the OOLA, rather than embrace this control and responsibility and be accountable for it, RST contractually evades and shifts this responsibility to RST Contractors.

364.    Accordingly, as a result of the violations described in paragraphs 361 and 362, Plaintiffs, individually, and the Owners as a class, have suffered injury in that RST fails to assume exclusive control and complete responsibility for the leased equipment and, instead, shifts that responsibility to Owners.

## CAUSES OF ACTION

### A.    TRUTH-IN-LEASING CLAIMS

365.    The allegations set forth in paragraphs 1 through 364 are incorporated by reference as if fully set forth herein.

366.    The TILR (49 C.F.R. §§ 376.1 *et seq.*) apply to leases between Owners and Authorized Carriers

367.    Each of Hatton, Garcia, Darkese and the putative class members is an Owner.

368.    RST is an Authorized Carrier.

369.    The OOLA is a lease within the meaning of the TILR.

370.    Plaintiffs entered into OOLAs with RST that were in effect during the Class Period.

371.    The terms of the OOLAs violate the TILR for the reasons set forth above, including, but not limited to, as set forth in paragraphs 76, 102, 113, 122, 133, 134, 153, 169, 172, 185, 200, 213, 243, 254, 255, 263, 264, 272, 281, 285, 289, 295, 306, 313, 314, 329, 340, 351, 352, 361, and 362.

372.    RST, by its business practices during the Class Period, also violated the TILR for the reasons set forth above, including, but not limited to, as set forth in paragraphs 78, 116, 123, 124, 152, 154, 165, 167, 173, 175, 183, 186, 196, 211, 214, 219, 241, 244, 250, 252, 261, 265, 273, 274, 280, 284, 288, 290, 299, 302, 304, 316, 328, 330, 336, 338, and 342.

373.    As a direct and proximate result of such violations, Plaintiffs have suffered injury and/or sustained damages as set forth above, including, but not limited to, as set forth in paragraphs 42, 90, 91, 98, 354, 355, 107, 108, 117, 118, 125, 126, 135, 136, 155, 156, 170, 171, 176, 177, 187, 188, 197, 198, 201, 202, 217, 218, 221, 245, 246, 247, 256, 257, 258, 266, 267, 268, 275, 276, 282, 283, 286, 287, 291, 292, 296, 297, 300, 307, 308, 309, 317, 318, 319, 321, 322, 332, 333, 334, 343, 344, 345, and 364.

374.    Accordingly, Plaintiffs are entitled to injunctive relief for such violations pursuant to 49 U.S.C. § 14704(a)(1).

375.    Plaintiffs are also entitled to any damages sustained by each of them as a result of such violations pursuant to 49 U.S.C. § 14704(a)(2).

376.    Plaintiffs are also entitled the award of a reasonable attorney's fee pursuant to 49 U.S.C. § 14704(e).

377.    Plaintiffs are also entitled to an award for such violations of pre-judgment interest, post-judgment interest, and costs as provided by law.

**B.    BREACH OF CONTRACT**

378.    The allegations set forth in paragraphs 1 through 377 are incorporated by reference as if fully set forth herein.

379.    The OOLAs constitute valid, enforceable contracts between RST, on the one hand, and Plaintiffs, respectively, on the other.

380.    Despite all conditions precedent having been satisfied, RST failed to comply with the OOLAs for the reasons set forth above, including, but not limited to, as set forth in paragraphs 9, 11, 32, 123, 152, 165, 167, 173, 183, 196, 211, 214, 219, 241, 240250, 252, 261, 274, 280, 284, 288, 290, 299, 302, 304, 328, 336, and 338.

381.    As a result of such breaches, Plaintiffs have suffered damages as set forth above, including, but not limited to, as set forth in paragraphs 126, 156, 171, 177, 188, 198, 218, 221, 246, 247, 257, 258, 267, 268, 276, 283, 287, 292, 300, 308, 309, 333, 334, 344, and 345, including damages suffered as a consequence of such breaches, and are entitled to an award of such damages against RST, plus pre-judgment interest, post-judgment interest, and costs as provided by law.

382.    Plaintiffs retained the undersigned attorneys to demand that RST perform its obligations under the OOLAs as set forth above.  Plaintiffs hereby demand that RST perform the obligations under the OOLAs that it has failed to perform as set forth above.  If performance is not tendered with 30 days hereof, Plaintiffs may recover their reasonable attorney's fees pursuant to TEX. CIV. PRAC. & REM. CODE §38.001.

**C.    MISREPRESENTATIONS**

383.    The allegations set forth in paragraphs 1 through 382 are incorporated by reference as if fully set forth herein.

384.     RST, as an Authorized Carrier, had a duty under the TILR to disclose certain information to Plaintiffs in the OOLAs and RST's dealings with Plaintiffs related thereto.

385.     At all relevant times, RST was aware of the TILR and the information it was required to disclose thereby.

386.     RST breached that duty of disclosure by failing to comply with the TILR for the reasons set forth above, including, but not limited to, as set forth in paragraphs 11, 33, 76, 102, 113, 116, 122, 124, 133, 134, 153, 154, 169, 172, 175, 185, 186, 200, 213, 216, 243, 244, 254, 255, 263, 264, 265, 281, 285, 289, 295, 306, 313, 314, 316, 329, 330, 340, 341, 351, and 352.

387.     As a result of such breaches, RST failed to disclose material facts within its knowledge as set forth above, including, but not limited to, as set forth in paragraphs 76, 102, 113, 116, 122, 124, 133, 134, 153, 154, 169, 172, 175, 185, 186, 200, 213, 216, 243, 244, 254, 255, 263, 264, 265, 281, 285, 289, 295, 306, 313, 314, 316, 329, 330, 340, 341, 351, and 352.

388.     As such, such materials facts were at all relevant times solely within RST's possession and control, RST knew that Plaintiffs were ignorant of such facts and did not have an equal opportunity to discover the truth.

389.     By its silence, RST intended to induce RST Contractors, including Plaintiffs, to: (i) enter into OOLAs; (ii) to refrain from exercising their right to terminate their OOLAs: (i) to refrain from seeking payment from RST compensation they were due but not paid under the terms of the OOLA; and (iv) to refrain from obtaining products or services, such as insurance, from or through persons other than RST.

390.     As a result of such non-disclosures, Plaintiffs have suffered damages, including without limitation consequential damages, plus pre-judgment interest, post-judgment interest, and costs as provided by law.

**D.   DECLARATORY RELIEF**

391.    The allegations set forth in paragraphs 1 through 390 are incorporated by reference as if fully set forth herein.

392.    Plaintiffs seek a declaration that: (i) the OOLAs violate the TILR for the reasons set forth above, including, but not limited to, as set forth in paragraphs 76, 102, 113, 122, 133, 134, 153, 169, 172, 185, 200, 213, 243, 254, 255, 263, 264, 272, 281, 285, 289, 295, 306, 313, 314, 329, 340, 351, 352, 361, and 362; (ii) that the business practices of RST violate the TILR for the reasons set forth above, including, but not limited to, as set forth in paragraphs 78, 116, 123, 124, 152, 154, 165, 167, 173, 175, 183, 186, 196, 211, 214, 219, 241, 244, 250, 252, 261, 265, 273, 274, 280, 284, 288, 290, 299, 302, 304, 316, 328, 330, 336, 338, and 342; (iii) that the business practices of RST breached the OOLA for the reasons set forth above, including, but not limited to, as set forth in paragraphs 9, 11, 32, 123, 152, 165, 167, 173, 183, 196, 211, 214, 219, 241, 240250, 252, 261, 274, 280, 284, 288, 290, 299, 302, 304, 328, 336, and 338; and (iv) that RST committed fraud by failing to disclose material facts as set forth above, including, but not limited to, as set forth in paragraphs 76, 102, 113, 116, 122, 124, 133, 134, 153, 154, 169, 172, 175, 185, 186, 200, 213, 216, 243, 244, 254, 255, 263, 264, 265, 281, 285, 289, 295, 306, 313, 314, 316, 329, 330, 340, 341, 351, and 352.

393.    In addition, Plaintiffs seek a declaration that:

(i)      any rate sheet not signed by an Owner that decreases the compensation due such Owner under the terms of the OOLA is void and unenforceable;

(ii)     the 10% mark-up provided in Appendix D of the OOLA does not apply to and RST is not entitled to deduct from an RST Contractor's payment or settlement:  (i) any "cost of operation" governed by section 5.9, including any "cost of operation" governed by section 5.2, section 5.5, or section 5.6; or (ii) any other premium or other cost for an item that may be deducted from an RST Contractor's payment or settlement under the terms of the OOLA;

(iii)  the OOLA only permits RST to deduct the premiums for occupational accident insurance from RST Contractor payments or settlements even if the amount of such premiums is less than the cost stated in section 7.4 of the OOLA;

(iv)  the "cost" of comprehensive collision insurance for purposes of section 5.6 and section 5.9 of the OOLA does not include the deductible or self-insured retention for a claim under such insurance;

(v)  the OOLA, taken as a whole, including section 5.5, in particular, does not make an RST Contractor responsible for trailer maintenance costs, including the costs or repairs for trailer wear and tear;

(vi)  the OOLA, taken as a whole, does not make an RST Contractor responsible for the maintenance of any other equipment that an RST Contractor may rent from RST (or any costs associated therewith);

(vii)  the OOLA, taken as a whole, including section 5.5, in particular, only makes an RST Contractor liable for the first $500.00 [or $25,000.00 in the case of the Most Recent Version] loss of or damage to an RST trailer;

(viii)  the OOLA, taken as a whole, including section 5.5, in particular, only makes an RST Contractor liable for the loss of or damage to an RST trailer or other equipment that is not compensated for such loss or damage by insurance or otherwise;

(ix)  The phrase "all associated insurance costs" in the last sentence of section 5.7(a) of the OOLA refers solely to the costs associated with comprehensive & collision insurance and does not permit RST to deduct premiums or any other cost for public liability, property damage and cargo insurance covering the leased equipment from an RST Contractor's payment or settlement;

(x)  the OOLA, taken as a whole, including section 5.7(a), in particular, does not authorize RST to assess an RST Contractor a charge for any deductible or self-insured retention RST pays in connection with a Leased Equipment Claim;

(xi)  Additionally, or in the alternative, section 5.7(a) only permits RST to charge an RST Contractor $500.00 [or $25,000.00 in the case of the Most Recent Version] for any deductible or self-insured retention RST pays in connection with a Leased Equipment Claim.

394.  All conditions precedent having been satisfied, Plaintiffs seek to recover such costs and reasonable and necessary attorney's fees as are equitable and just pursuant to TEX. CIV. PRAC. & REM. CODE § 37.009.

#### E.   EXEMPLARY DAMAGES

395.   The allegations set forth in paragraphs 1 through 394 are incorporated by reference as if fully set forth herein.

396.   Plaintiffs sue to recover punitive damages from RST taking into consideration the nature of the wrong, the character of the conduct involved, the degree of culpability of RST, the situation and sensibilities of the parties concerned, the extent to which such conduct offends a public sense of justice and propriety, and the net worth of RST.  Additionally, Plaintiffs will also show that RST's' misconduct constituted actual fraud in that RST's failures to disclose were intentional and/or reckless.  Further, Plaintiffs will show that the harm with respect to which Plaintiffs seek recovery resulted from actual fraud.  Therefore, Plaintiffs seek punitive and/or exemplary damages in an amount that will inhibit and deter RST from engaging in this type of conduct in the future.

397.   RST also knowingly or intentionally, and with the intent to defraud Plaintiffs, caused the Plaintiffs, without their effective consent, to sign the OOLAs, which documents affected the pecuniary interests of Plaintiffs in violation of TEX. PEN CODE. § 32.46.  Accordingly, pursuant to TEX. CIV. PRAC. & REM. CODE § 41.008(c), the statutory limitation on the recovery of exemplary damages does not apply to exemplary damages based on such conduct.

#### F.   INDIVIDUAL DEFENDANTS PERSONAL LIABILITY FOR RST VIOLATIONS OF TILR

398.   The allegations set forth in paragraphs 1 through 397 are incorporated by reference as if fully set forth herein.

399.   Each of the individual Defendants, Shuler, Maronen, and Sanchez, (collectively, the "Individual Defendants") is a director or officer of RST.

400.   In those capacities, each of the Individual Defendants plays a key role in managing the day-to-day operations of RST, is aware of and has either approved of or been responsible for

developing, implementing, and enforcing the terms of the OOLA and business practices set forth above.

401.    On information and belief, Shuler oversaw the drafting of and approved the terms and conditions of the OOLAs, which were designed so that they would be signed by Shuler on behalf of RST in his capacity as President of RST.

402.    On information and belief, Maronen manages RST's financial records and accounting personnel and is and was during the Class Period responsible for RST Contractor settlements and any business practices of RST related thereto.  On information and belief, Maronen is and was during the Class Period also responsible for RST's insurance and makes all decisions with respect thereto, including, by way of example only, RST's decision to withhold payment from Hatton for the Leased Equipment Claim.

403.    On information and belief, Sanchez, among other duties, manages the equipment maintenance and repair operations and staff of RST, including the maintenance and repair of both RST's equipment and any Leased Equipment submitted to RST for maintenance and repair, and thereby implements and enforces RST's business practices concerning financial responsibility and cost related thereto.  By way of example only, Sanchez as well as staff that report to Sanchez have communicated to both Hatton and Garcia that RST Contractors are responsible for the repair of RST equipment (such as trailers and loaner trucks), including the cost to repair any such equipment.

404.    Section 390.13 of the TILR provides, in relevant part, that:

No person shall aid, abet, encourage, or require a motor carrier or its employees to violate the rules of this chapter.

*See* 49 C.F.R. § 390.13.

405.     By their actions and omissions, each of the Individual Defendants has aided, abetted, encouraged, or required RST or its employees to commit one or more of the TILR violations set forth above.

406.     As such, each of the Individual Defendants is jointly and severally liable for RST's violations of the TILR.

**G.    INDIVIDUAL DEFENDANTS' PERSONAL LIABILITY FOR RST DEBTS**

407.     The allegations set forth in paragraphs 1 through 406 are incorporated by reference as if fully set forth herein.

408.     On or about February 21, 2025, RST forfeited its corporate privileges pursuant to TEX. TAX. CODE § 171.309.

409.     On information and belief, RST forfeited its corporate privileges as a result of failing to file a report or pay or tax that was due on or prior to May 15, 2024.

410.     RST did not have its corporate privileges reinstated until July 8, 2025.

411.     Under TEX. TAX. CODE § 171.255(a), if the corporate privileges of a corporation are forfeited for the failure to file a report or pay a tax or penalty, each director or officer of the corporation is liable for each debt of the corporation that is created or incurred in the state of Texas after the date on which the report, tax, or penalty is due and before the corporate privileges are revived ("Period of Personal Liability").

412.     Each of the claims set forth above constitutes a "debt" within the meaning of TEX. TAX. CODE § 171.255(a).

413.     As the Class Period encompasses the Period of Personal Liability, each of the Individual Defendants is personally liable for any of the debts to Plaintiffs, individually, and the Owners as a class, that was created or incurred in the Period of Personal Liability.

<u>**JURY DEMAND**</u>

414.    Plaintiffs demand a trial by jury.

<u>**PRAYER**</u>

Accordingly, Plaintiffs Jerry Hatton, David Garcia, and Vuvinnoe Darkese, individually,

on behalf of themselves and the class of Owners they represent, respectfully request the Court to:

(i)     Certify a class of Owners as defined in paragraph 26 and certify subclasses of Owners as defined in paragraphs 93, 119, 204, and 220;

(ii)    Enter an injunction (i) giving RST a period of 90 days to submit to this Court for its approval an amended OOLA that complies with the TILR; (ii) after the expiration of 90 days, enjoining RST from performing any transportation requiring DOT authorization using equipment it does not own until it executes written agreements approved by the Court as conforming to the TILR with each person leasing such equipment to RST; (iii) enjoining RST from engaging in the business practices described in paragraphs 78, 116, 123, 124, 152, 154, 165, 167, 173, 175, 183, 186, 196, 211, 214, 219, 241, 244, 250, 252, 261, 265, 273, 274, 280, 284, 288, 290, 299, 302, 304, 316, 328, 330, 336, 338, and 342, of this Complaint that violate the terms of the TILR; (iv) enjoining RST from engaging in the business practices described in paragraphs 123, 152, 165, 167, 173, 183, 196, 211, 214, 219, 241, 240250, 252, 261, 274, 280, 284, 288, 290, 299, 302, 304, 328, 336, and 338 of this Complaint that fail to comply with the terms of the OOLA governed by the TILR; (v) enjoining from RST from engaging in acts of retaliation and harassment against Jerry Hatton, David Garcia and Vuvinnoe Darkese, and any and all other potential members of the class; and (vi) notifying proposed members of the class of: (a) the terms of the OOLA that violate TILR, including by omission; and (b) the business practices of RST that violate the TILR, including business practices that fail to adhere to or perform terms of the OOLA governed by TILR; and (vii) to the extent damages are not available for such violation on a class-wide basis, notifying proposed members of the class of the right to seek damages for such violations;

(iii)   Granting declaratory relief as set forth in paragraphs 392 and 393;

(iv)    reasonable attorney's fees and expenses;

(v)     actual damages, jointly and severally against each Defendant, in an amount to be determined by the jury;

(vi)    exemplary damages for RST's actual fraud in an amount to be determined by the jury;

(vii)   prejudgment and post-judgment interest as provided by applicable law;

(viii)    all costs in prosecuting this litigation; and

(ix)    any additional relief, legal and equitable, general or special, to which the Plaintiffs
          may be justly or equitably entitled.


Respectfully submitted,

THE LAW OFFICES OF ORIN H. LEWIS, PLLC


By: _____/s/_____
          Orin H. Lewis
          olewis@orinhlewis.com
          State Bar No. 00791110
          808 Travis St., Street, Suite 1412
          Houston, Texas 77002
          Telephone: 713.489.9988
          Facsimile: 713.489.1348


CROWLEY NORMAN LLP


By: _____/s/_____
          Richard Norman
          rnorman@crowleynorman.com
          State Bar No. 00788128
          R. Martin Weber
          mweber@crowleynorman.com
          State Bar No. 00791895
          Three Riverway, Suite 1775
          Houston, Texas 77056
          Telephone: 713.651.1771
          Facsimile: 713.651.1775


**ATTORNEY FOR PLAINTIFFS**