UNITED STATES DISTRICT COURT FOR THE SOUTHERN
DISTRICT OF TEXAS HOUSTON DIVISION

| | | |
|---|---|---|
| JERRY HATTON, DAVID GARCIA, VUVINNOE DARKESE, VINCE MARTINEZ, ABUNWA COOPER, and BERNARDO SOTO, INDIVIDUALLY AND ON BEHALF OF THEMSELVES AND A PROPOSED CLASS OF SIMILARLY SITUATED PERSONS, <br><br> Plaintiffs, <br><br><br> v. <br> RICKY SHULER TRUCKING, INC. RICKY SHULER, JEFFREY MARONEN, and DANIEL SANCHEZ, <br><br> Defendants | § § § § § § § § § § § § § § § § § § § § § | Civil Action No. 25-3373 <br><br><br><br><br><br><br><br><br> JURY DEMANDED |

**EXHIBIT DEX A**

### DECLARATION OF JEFF MARONEN

1.   My name is Jeff Maronen. I am named defendant in the above-styled case (the "**Lawsuit**"). I am the Chief Operating Officer of defendant Ricky Shuler Trucking, Inc. ("**RST**") I have personal knowledge of the facts stated in this declaration. I am over the age of twenty-one years and fully competent to make this declaration. I have reviewed Defendants' Brief in Opposition to Plaintiff's Request Temporary Restraining Order (the "**Brief**") and the Exhibits attached thereto.

2.   Plaintiff David Garcia is an RST contractor who, during the relevant time period, worked RST's South Texas Region, internally

1

referred to as "STX," which includes Eastside, Stockdale, and Kenedy areas. In the STX region, NGL Energy Partners ("**NGL**") is RST largest client.

3.  On May 19, 2025, Garcia rejected an NGL priority pickup from a storage tank owned by Zarvona Energy ("**Zarvona**"). Garcia stated the reason for the rejection was because, as depicted in the photograph attachments to DEX 3 (a true and correct copy of an RST email communicating Garcia's reason for rejection with attendant photographs to Zarvona), there are two strings of barbed wire, which Garcia believed would puncture the hose that is attached to the storage tank to transfer the oil. It is a Kevlar-reinforced hose and it would lay under the barbed wire. The barbed wire would not be punctured by the hose. Subsequently, another RST contractor completed the job without issue or puncture. Attached to the Brief as DEX 1 and DEX 2 are true and correct copies of RST emails concerning the May 19, 2025 incident.

4.  In an email RST received from Zarvona hours after Garcia's rejection, it explained Garcia's "reject needs to be removed" because the "location is on a hunting ranch and by lease agreement we have to keep those behind the dangerous barbwire." A true and correct copy of that email is attached to the Brief as DEX 4. During a telephone call between me and representatives from Zarvona and NGL, both representatives expressed frustration over Garcia's rejection and insisted that the job Garcia rejected be performed (which it was without issue). On that same call the Zarvona representative instructed me not to assign Garcia to any further jobs involving that Zarvona location, and the NGL representative instructed me not to assign Garcia to any NGL related load. Attached hereto is a true and correct copy of an email I sent to Salvador Gomez (RST's Senior Logistics Manager) informing of Garcia's ban from NGL jobs. Attached to the Brief as DEX 5 is a true and correct copy of my email to Salvador Gomez.

5.  As noted, NGL is RST's largest client in the STX region. The ban NGL placed on Garcia consequently had a negative impact on the amount of jobs that were assigned to Garcia.

6.  As required by the Department of Transportation ("**DOT**") for carriers like RST, RST contracted an independent third party, Umbra

2

Systems, LLC ("**Umbra**"), to handle the DOT-mandated random drug screening for RST drivers. Attached to the Brief as DEX 6 is a true and correct copy of an email, with attachment, I received from Umbra that details how drivers are randomly selected. DEX 6.

7. On August 22, 2025, Umbra notified RST that multiple drivers have been selected for random drug screening, among those selected was Garcia. Attached to the Brief as DEX 7 is a true and correct copy of the email RST received from Umbra. On August 27, 2025, I notified the relevant RST supervisors to not dispatch those drivers Umbra selected for random drug screening. For Garcia, I notified his supervisor, John Gillespie.

8. RST does not and cannot directly or indirectly control who is selected for random drug screening. Garcia was randomly selected for drug testing by Umbra, who produced a record indicating that Garcia was selected for random drug screening on July 1, 2025, prior to this suit being filed. *See* DEX 7 at 2.

9. I understand that Garcia states that Gillespie told him that I told Gillespie that "I hate" Garcia and then proceeded to tell Gillespie to inspect Garcia's trailer "carefully to see if [he] could find any maintenance issues." I never said either to Gillespie, who similarly has no recollection of me stating either.

10. Part of Gillespie's job as a supervisor is to inspect all tractors and trailers for compliance with DOT regulations. RST contractor's tractors and trailers bear RST's insignia and markings.

11. Attached to the Brief as DEX 8 is a true and correct copy of the December 23, 2019 agreement between RST and Bernardo Soto, under which and pursuant to, Soto leased with the option to buy a 2020 Mack (Vin# 1M1PN4GY2LM005958) (the "**2020 Mack**"). The December 23, 2019 agreement still holds a balance.

12. Later, Soto entered into a new agreement for a newer truck. He decided to exercise his purchase option under the December 23, 2019 agreement and asked RST to help him sell the 2020 Mack. RST helped by arranging for the 2020 Mack's sale through Machinery Auctioneers. On August 28, 2025, RST notified Soto that the 2020 Mack sold at

Machinery Auctioneers. Attached to the Brief as DEX 9 is a true and correct copy of an RST email to Soto.

13. RST delivers settlement statements to its contractors when it pays them. Those settlement statements itemize deductions.

14. I declare under penalty of perjury that the foregoing is true and correct.

Executed by:

DocuSigned by:

*Jeff Maronen*　　　　　　　　　9/5/2025

Jeffery Maronen　　　　　　　　　Date